(43 App. Div. 68.)

### MERRITT et al. v. MERRITT.

(Supreme Court, Appellate Division, First Department. July 18, 1899.)

1. INSANE PRINCIPAL—MORTGAGE BY AGENT—KNOWLEDGE OF MORTGAGEE.

    In the foreclosure of a mortgage executed by an agent, acting under a power of attorney, at the time his principal was insane, after proof of the principal's insanity at the time of the execution of the mortgage, the burden of proof is on the mortgagee or his assignee to show that such insanity was not known to him at the time.

2. SAME—VALIDITY OF MORTGAGE.

    Where a mortgage is executed by an agent at the time his principal is insane, and the mortgagee has no knowledge of such insanity, it is binding on the principal.

Appeal from special term, New York county.

Action by Helen S. Merritt and another against John Merritt, as executor of Hannah B. Merritt, deceased, to foreclose a mortgage. There was a judgment for plaintiffs, and defendant appeals. Reversed.

The nature of the action and the defense are stated in the opinion upon a former appeal. 27 App. Div. 208, 50 N. Y. Supp. 604.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

De B. Wilmot, for appellant.
Delos McCurdy, for respondents.

BARRETT, J. What we held, when this case was before us upon the former appeal, was, as correctly stated in the headnote, that "the

authority of an agent acting under a power of attorney ceases or is. suspended by the insanity of his principal; and where the fact of such insanity is known, both to the agent and to the party dealing with him, the contract entered into by the agent on behalf of his principal is not binding upon the latter." This precise proposition was all that the exceptions contained in the record then called upon us to decide. A different question is presented upon this appeal. Upon the second trial now under review, the plaintiffs rested, as they did before, upon proof of the power of attorney from Mrs. Hannah B. Merritt to her son George Merritt of the bond and mortgage executed by the latter as such attorney to William Post, and of the assignment of the bond and mortgage by Post to the plaintiffs. It is not disputed that upon this proof the plaintiffs were prima facie entitled to a judgment of foreclosure and sale as prayed for. The defendant John Merritt, as executor and trustee under Mrs. Merritt's will, then proceeded with his defense. He gave evidence tending to show that, at the time when the bond and mortgage were executed, Mrs. Merritt was non compos mentis. Before he had completed his proofs on this head, the learned trial justice asked his counsel whether he intended to offer evidence showing knowledge on Mr. Post's part of Mrs. Merritt's insanity at the time he took the bond and mortgage. The counsel's reply was in the negative. Thereupon the court held that Mrs. Merritt's insanity, standing alone, was no defense to the action; and that the defendant was bound to prove the additional fact that Post knew of her insanity, or had reason to believe that she was insane, when he took the bond and mortgage. Acting upon this view, the learned justice declined to pass upon the question of Mrs. Merritt's sanity, and at once gave judgment for the plaintiffs. In his decision he frankly and fairly states that "the defendant did not complete his proof as to the mental condition of Hannah B. Merritt, and I make no decision as to what her mental condition was at the time of the execution of the bond and mortgage in suit."

We think that, under the authorities in this state, this was an inaccurate view of the burden of proof. It was seemingly in accordance with the rule in England (Campbell v. Hooper, 3 Sm. & G. 153), where Vice Chancellor Stuart in a similar case said that: "You must show that the contracting party, claiming under the contract (there, as here, a mortgage), knew of the lunacy of the other party, and took advantage of it, before you can deprive him of the right to recover under the contract at law; and it would be very strange if a court of equity, in dealing with contracts, were to proceed upon a different principle." So, in Loan Co. v. Stone, 61 Law J. Ch. 449, it was held that the burden of proving both the insanity and the knowledge of it by the other contracting party lies upon the party seeking to avoid the contract. In this state, however, the rule is the other way. Whatever question there may be as to deeds, it is well settled that a mortgage executed by a lunatic is voidable only. Ingraham v. Baldwin, 9 N. Y. 45. Being voidable at the election of the lunatic's personal representatives, the latter may, in the first instance, rest upon proof of the lunacy; and it thereupon becomes incumbent upon the mortgagee or his assignees "to show the facts necessary in equity

to sustain" the instrument. Goodyear v. Adams (Sup.) 5 N. Y. Supp. 275, affirmed in 119 N. Y. 650, 23 N. E. 1149; Riggs v. Tract Soc., 84 N. Y. 330; Hicks v. Marshall, 8 Hun, 327; Johnson v. Stone, 35 Hun, 383. Our rule seems to be the more reasonable one. It is quite enough to put upon the lunatic's representatives the burden of proving the lunacy. That burden is by no means light. They must show that their testator, when he executed the instrument, was "so deprived of his mental faculties as to be wholly, absolutely, and completely unable to understand or comprehend the nature of the transaction." Aldrich v. Bailey, 132 N. Y. 87, 88, 30 N. E. 264. When they have proved this, the party claiming under the instrument may well be called upon to show his good faith and ignorance of the insanity. If the mortgagor was insane when he signed the mortgage, the mortgagee's rights under the instrument are not prima facie sustainable. Equity, however, will sustain them, and enforce the contract, in a proper case; but the least that can then be required of the mortgagee is that he point out and establish the grounds upon which equity should lend him its aid. What are sufficient grounds for the enforcement of such contracts in equity has been repeatedly pointed out in the cases. Insurance Co. v. Hunt, 79 N. Y. 541; Hicks v. Marshall, supra; Riggs v. Tract Soc., supra; Johnson v. Stone, supra.

The case first cited is almost directly in point. There, as here, the action was for the foreclosure of a mortgage executed by the alleged lunatic. It was defended by the committee of the lunatic. The special term found as a fact that the alleged lunatic was of sound mind at the time when she executed the bond and mortgage. The general term (14 Hun, 169), "conceding, without deciding," that the finding was erroneous, held that the judgment of foreclosure should be sustained upon the ground that, inasmuch as the bond and mortgage were given for a full, valuable consideration, without knowledge on the mortgagee's part of the insanity, every principle of justice required that it should be sustained. "It would," said the court, "be derogatory to the law, if, after obtaining the money from the plaintiff and using it for her own benefit, she should now be allowed to defeat the securities which she gave for the repayment." This doctrine was sustained by the court of appeals, "both upon principle and authority"; and Judge Danforth there quoted with approval the following language of the chancellor in Elliot v. Ince, 7 De Gex, M. & G. (56 E. C. L.) 487:

"The principle of that case [Molton v. Camroux, 2 Exch. 487, affirmed in error, 4 Exch. 17], was very sound, viz.: That an executed contract, when parties have been dealing fairly, and in ignorance of the lunacy, shall not afterwards be set aside, and a contrary doctrine would render all ordinary dealings between man and man unsafe."

See, also, the many cases to the same effect in this and other states, cited by Judge Danforth.

The same rule was referred to with approval in Riggs v. Tract Soc., supra, where Judge Danforth, again writing for the court of appeals, observed:

"It is said, however, and I think justly, by the learned counsel for the defendant, that when made in good faith, for the benefit of the lunatic, without notice of incapacity, and so far performed that, if rescinded, the party executing cannot be placed in statu quo, the contract shall stand."

So, in Carter v. Beckwith, 128 N. Y. 321, 28 N. E. 582, Andrews, J., said:

"The courts do enforce in some cases, on equitable grounds, the acts and contracts of lunatics made before the lunacy has been formally established, where the other party has acted in good faith, without notice."

—Citing in support of the proposition the Mutual Life Case.

The rule laid down in these cases is not affected by the incident that the alleged lunatic in the case at bar acted through an agent. The equities between the original parties must still determine the question of enforcement. In his opinion upon the former appeal, Justice Rumsey thus summed up the rule on that head:

"It must be held that, when one undertakes to deal with an agent having a written power of attorney, he, equally with the agent, knowing of the insanity of the principal, that the transaction thus made has no more weight than if the transaction had been directly with the insane principal himself."

We may add that it has no less weight.

In the case from which Justice Rumsey so copiously quotes (Davis v. Lane, 10 N. H. 156), Chief Justice Parker also said that:

"The act of the agent in execution of the power, however, will not in all cases, be avoided on account of the incapacity. If the principal has enabled the agent to hold himself out as having authority by a written letter of attorney, or by a previous employment, and the incapacity of the principal is not known to those who deal with the agent, within the scope of the authority he appears to possess, the transaction may be held valid and binding upon the principal. Such case forms an exception to the rule, and the principal, and those claiming under him, may be precluded from setting up his insanity as a revocation, because he had given the agent power to hold himself out as having authority, and because the other party had acted upon the faith of it, and in ignorance of any termination of it."

The same limitation upon the rule of revocation or suspension, resulting from the insanity of the principal, was laid down in Refining Co. v. McMahon's Adm'r, 38 N. J. Law, 536; Hill v. Day, 34 N. J. Eq. 150; and Drew v. Nunn, L. R. 4 Q. B. Div. 661. In Hill v. Day it was held that:

"Where a principal becomes insane after appointing an agent, the principal's insanity operates, per se, as a revocation of the agent's authority, except * * * where a consideration of value is given by a third party, trusting to an apparent authority, and in ignorance of the principal's incapacity."

In Drew v. Nunn, the defendant's wife had authority to pledge his credit for goods. It was held that goods furnished to her, while he was insane, by a tradesman acting in ignorance of the insanity, might be recovered for. Lord Justice Brett stated the ground of the decision as follows:

"The principal is bound, although he retracts the agent's authority, if he has not given notice, and the latter wrongfully enters into a contract on his behalf. The defendant became insane, and was unable to withdraw the authority which he had conferred upon his wife. He may be an innocent sufferer by her conduct, but the plaintiff, who dealt with her bona fide, is also innocent; and where one of two persons, both innocent, must suffer by the wrongful act

of a third person, that person making the representation which, as between the two, was the original cause of the mischief, must be the sufferer, and must bear the loss."

If the contract was thus enforceable in a case where the agent obtained goods from the tradesman for her own benefit, upon the faith of her apparent authority, a fortiori is it enforceable where the contract is made directly for the benefit of the lunatic, to relieve his property from a lien thereon or to swell his estate.

We have thus gone over the various features of this case more fully, perhaps, than was essential to the decision of the present appeal. We have done this to correct any possible misapprehension upon another trial of the scope of our previous decision. Upon the first trial all the defendant's evidence in support of his defense was excluded. That evidence apparently embraced notice of the insanity as well as the insanity itself. The precise question, therefore, was whether the insanity, plus the notice, constituted a defense. We held that it did. We were not called upon to decide whether the insanity, minus the notice, constituted, prima facie, a defense. The defendant clearly had a right to prove notice of the insanity, but we did not hold that he was bound to do so. If his testimony sufficiently established Mrs. Merritt's insanity within the definition formulated in Aldrich v. Bailey, supra, he was, in our judgment, then and now entitled to rest; and, if his testimony on that head was not balanced by testimony subsequently adduced by the plaintiffs, he was entitled to a finding to that effect. If, upon all the testimony adduced by both sides, the court had found itself unable to make such a finding, all other grounds of equity would have disappeared, and the plaintiffs would have been entitled to judgment. If, however, the court had found the fact of insanity, then the equitable considerations to which we have referred would have supervened, and have become entitled to consideration. The plaintiffs did not prove—indeed, were not called upon to prove— the facts upon which such considerations would have become material, for the reason that the court, as we have seen, gave them judgment precipitately, upon an erroneous view of the burden of proof.

It is said that there is evidence that the plaintiffs, as Mr. Post's assignees, had notice of Mrs. Merritt's insanity. But the real question on that head relates to the transaction with Mr. Post. If he was entitled, owing to the absence of notice and the advance of full $25,000, which, as is said, went to pay off an existing mortgage upon Mrs. Merritt's property, to enforce the security, his assignment to the plaintiffs carried the same right. Our conclusion is that the defendant should have been permitted to complete his proof of insanity, with the right on the plaintiffs' part thereupon to put in counter proofs of sanity, and also to prove any facts which would have entitled Mr. Post equitably to enforce the mortgage, notwithstanding Mrs. Merritt's insanity.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.