OLIVE T. HARDY, as Trustee for JANET T. HARDY, Respondent, v.
VICTORIA BERGER and Others, Appellants, Impleaded with DAVID
E. GOLDFARB and Others, Defendants.

*Incompetency — what evidence does not establish it — presumption from a decree
upon an inquisition of lunacy — when a mortgage given by the alleged incompe-
tent will not be set aside — subrogation of mortgagee to prior security.*

A decree upon an inquisition of lunacy is conclusive evidence of the insanity of
the party from the time when it is found, but it is only presumptive evidence
of incapacity during all the previous time referred to in the findings.

A mortgage executed by a woman, who was afterwards declared to be insane, will
not be canceled at the instance of the committee of her estate, where the evi-
dence does not establish that the mortgagor was incompetent at the time she
executed the mortgage, or that the mortgagee had knowledge or notice of any
incompetency or suspicion thereof sufficient to put her on inquiry as to the
mortgagor's mental condition, and it appears that the estate of the incompetent
has had the benefit of the money advanced on the mortgage and that no offer of
restitution has been made.

*Semble,* that where it appears that the mortgage was executed to enable the
incompetent to repurchase the mortgaged premises from a person who had
purchased them at a foreclosure sale, the court, if necessary to protect the
mortgagee's rights, will hold that the mortgagee became subrogated to the
rights of the purchaser at the foreclosure sale and can enforce a lien for her
advances.

Evidence that the mortgagor was eccentric and lived alone, that she had filled
her home almost to overflowing with art treasures, that she dressed in a
peculiar manner, and that, at the time of the execution of the mortgage, she
became irascible, walked up and down and muttered to herself, is not suf-
ficient to sustain a finding that she was insane at the time of the execution of
such mortgage.

APPEAL by the defendants, Victoria Berger, by Alfred E. Sander
her guardian ad litem, and others, from a judgment of the Supreme
Court in a foreclosure action in favor of the plaintiff, entered in
the office of the clerk of the county of Kings on the 17th day of
April, 1901, upon the decision of the court rendered after a trial at
the Kings County Special Term as amended by an order entered in
said clerk's office on the 7th day of May, 1901.

*Alfred E. Sander,* for the appellants.

*John F. Clarke,* for the respondent.

GOODRICH, P. J.:

The defendants Sander and Ketcham, as committee of the estate of Victoria Berger, an incompetent, and said incompetent, through said Sander, her guardian *ad litem*, appeal from a judgment of foreclosure of a mortgage for $8,000, dated February 16, 1900, executed by Miss Victoria Berger to the plaintiff, as trustee for Janet T. Hardy, on property known as No. 44 South Oxford street, Brooklyn. In the answer the committee alleged that Miss Berger was insane when she executed the mortgage and was unable to understand the transaction, and that the plaintiff through her agents knew such facts. They prayed affirmative judgment canceling the bond and mortgage.

The law applicable to this appeal is well stated in *Mutual Life Ins. Co.* v. *Hunt* (79 N. Y. 541), an action for the foreclosure of a mortgage executed by Camilla Hunt on April 23, 1870. Interest was paid in March, 1871, but default was made in September, 1871. In December, 1871, Camilla was adjudged a lunatic and a committee of her person and estate appointed. There was a judgment of foreclosure in the action, which was affirmed by the General Term (14 Hun, 169), on the ground that Camilla was sane and capable when she executed the mortgage. The General Term, however, discussed the further proposition that as the case presented a contract executed upon a valuable consideration of which the lunatic had the benefit, made by the plaintiff without fraud or influence, without knowledge of the insanity and without notice or information calling for inquiry, the plaintiff was entitled to recover. The Court of Appeals, DANFORTH, J., writing, unanimously held that the doctrine announced by the General Term was correct upon principle and authority; upon principle because the plaintiff's money was had by the defendant, appropriated to her use and thus tended to increase the body of her estate, and that she could not be permitted to stultify herself to the prejudice of the plaintiff, for she would thus make her misfortune an excuse for fraud; that the loan was made in the ordinary course of business; that it was a fair and reasonable transaction; that Camilla acted for herself, but with the aid of an attorney; that if mental unsoundness existed it was not known to the plaintiff and the parties could not be put *in statu quo*. The court reviewed authorities in the English and American courts, and held that the case rested on the maxim that he who seeks equity

must do equity; that the defendant was seeking to deprive the plaintiff of its remedies to enforce the security while she retained the benefit of the contract; that this was so plainly inequitable and unjust as to render further discussion unnecessary, and that the fact that the borrower was subsequently upon inquisition taken declared to be insane did not alter the result; and that such proceeding had no effect upon a contract made without notice and on the faith of the presumption that Camilla was of competent understanding.

The *Hunt* case is complete authority upon the main questions involved in this appeal, and except for the fact that counsel eloquently and urgently contended that by the inquisition and finding in lunacy proceedings the burden of proof rested upon the plaintiff to establish the sanity of the mortgagor and the innocence of the plaintiff, we should content ourselves with the authority of that case. He cites *Merritt* v. *Merritt* (43 App. Div. 68) which held that in an action of foreclosure, where the defense interposed is the insanity of the mortgagor at the time of making the mortgage, the defense may rest upon making proof of the insanity, and that thereupon the burden of showing good faith on the part of the mortgagee and his ignorance of the mental condition of the mortgagor at the time of taking the mortgage is imposed upon the party taking the instrument. But it was also said in that case (p. 70): " If the mortgagor was insane when he signed the mortgage, the mortgagee's rights under the instrument are not *prima facie* sustainable. Equity, however, will sustain them and enforce the contract in a proper case; but the least that can then be required of the mortgagee is that he point out and establish the grounds upon which equity should lend him its aid. What are sufficient grounds for the enforcement of such contracts in equity has been repeatedly pointed out in the cases. (*Mutual Life Ins. Co.* v. *Hunt*, 79 N. Y. 541; *Hicks* v. *Marshall*, 8 Hun, 327; *Riggs* v. *American Tract Society*, 84 N. Y. 330; *Johnston* v. *Stone*,* 35 Hun, 380.) "

All of the cases thus cited announce the doctrine briefly stated in the *Riggs* case, that when a contract is " made in good faith, for the benefit of the lunatic, without notice of incapacity, and so far performed that if rescinded the party executing cannot be placed *in statu quo*, the contract shall stand."

---

* *Johnson* v. *Stone.*— [REP.

Assuming the correctness of the rule as to the burden of proof laid down in the *Merritt* case, let us examine the proceedings and evidence on the trial of the case at bar, to ascertain whether there is not sufficient evidence to justify the judgment.

Counsel for the committee admitted the allegations of the complaint and offered in evidence an extract from the minutes in *Matter of Victoria Berger*, an incompetent, containing questions and answers by the jury in that proceeding as follows:

"The first question: Q. Is Victoria Berger now incompetent, by reason of lunacy, to manage herself? A. Yes. The second question: Q. Is Victoria Berger now incompetent, by reason of lunacy, to manage her estate? A. Yes. The fourth* question: Q. If Victoria Berger is incompetent, when did such incompetency begin? A. In November, 1898." Also the final order confirming the findings of the jury as set forth in the minutes.

A decree upon inquisition of lunacy is conclusive evidence of the insanity of the party from the time when it is found. (*Wadsworth* v. *Sharpsteen*, 8 N. Y. 388.) But it is only presumptive evidence of his incapacity during all the previous time referred to in the findings. (*Van Deusen* v. *Sweet*, 51 N. Y. 378.)

If defendant's counsel had been content at the trial to rest upon the presumptive evidence of the order, and there had been no other evidence produced by the plaintiff, the defendant would have been entitled to a finding that Miss Berger was incompetent to execute the mortgage. But he was not content. He produced three witnesses, Adelaide T. Barré, a sister of Miss Berger and the committee of her person; also Josephine Ketcham, another sister, and Henry F. Barre, a nephew. I have scanned the testimony of these witnesses in vain to discover anything which shows any insanity or the incompetency of Miss Berger to execute the mortgage at the time it was made. It does show that she was eccentric and lived alone in her home, which was filled almost to overflowing with pictures, tapestries, rugs and bric-a-brac which she had collected "all over the world;" that she dressed in a peculiar manner. But the collection of art treasures and storing them in one's home, even to confusion and repletion, and non-conformity to fashion in dress, are hardly to be taken as evidence of insanity.

---

* *Sic.*

At the first interview, in November, 1899, in regard to the mortgage, when Dr. Hardy, the plaintiff's son, called in regard to making the loan, Mrs. Barre says that Miss Berger was present; that the interview began in the hall and was continued in the parlor, and that the conversation lasted three-quarters of an hour. No suggestion appears in Mrs. Barre's evidence of anything unusual in the conduct or conversation of Miss Berger. A second interview with Dr. Hardy occurred at the house three or four weeks afterward, which lasted about half an hour. Mrs. Barre says: "The language she (Miss Berger) used was refined." The next interview occurred at the office of the broker, Mr. Craig, in Montague street; it lasted from half to three-quarters of an hour, when Miss Berger complained of the delay and expressed a desire to have the matter settled. She said she could go to another place and get the entire thing through in five minutes; that she "exhibited fits of anger," "walked up and down all the time talking to herself and muttering to herself."

Mrs. Ketcham, the other sister, only testified to the condition of the house as being filled and cumbered with the curios.

Mr. Barre, the nephew, was present at an interview in the office of the Title Guarantee Company, for the purpose of closing the deal, when Miss Berger and Dr. Hardy were present. He says that Miss Berger was "irascible, walking up and down and muttering to herself, and she became highly indignant at some remarks that were made." He adds: "Everybody interested showed a degree of impatience."

This is a fair summary of the evidence of the defendants on the subject of Miss Berger's insanity or incompetency at and about the date of, and connected with the execution of, the mortgage. If no other evidence was produced in the lunacy proceedings, it hardly justified a finding of insanity of Miss Berger at the time of the transactions in question, or her incompetency to make the mortgage. The plaintiff had the right at this juncture to rest upon the evidence and to insist that it did not establish the insanity or incompetency of Miss Berger, and this without any regard to the question where the burden of proof rested. But her counsel went farther and produced the evidence of Mr. Hurley, an attorney and counselor at law, who was connected with the Title Guarantee Company and acted

for it in closing the title. He says that the plaintiff gave the company her check for $8,000, and that Miss Berger executed the bond and mortgage and indorsed eight checks used in closing the transaction; that he explained each of them to her when she indorsed them. There is no evidence that she was unable to understand the nature of the entire transaction.

Upon this evidence the court was justified in finding, as it did, that "The evidence shows that Dr. James Hardy was the agent for the plaintiff in the procurement of the mortgage in suit from the defendant Victoria Berger, but does not warrant a finding that the defendant was insane at the time she executed the mortgage herein, and I further find that neither the mortgagee nor her agents had knowledge or notice of any insanity, and were not put upon suspicion that the defendant was insane."

But there is another phase which involves the equity of the case. It appears that Edward Archer had foreclosed a mortgage upon the Oxford street house and obtained a judgment, and at the sale in foreclosure had purchased the property; that the money loaned by the plaintiff was used so that "Miss Berger secured possession of the property by paying back the $8,000; the whole of it. All the money was paid to Mr. Archer to secure the deed of the property back to her, so that this was a purchase-money mortgage. These checks were used in the closing of that transaction."

If it were necessary, we might well hold that the plaintiff could be subrogated to the rights of Mr. Archer and enforce a lien for her advances, as we said in *Durante* v. *Eannaco* (65 App. Div. 435).

We reach the conclusion that there is no evidence from which the Special Term was required to find that Miss Berger was insane or incompetent to execute the bond and mortgage, or that the plaintiff had any knowledge or notice or suspicion sufficient to put her on notice of any such condition; that, as the estate of Miss Berger has had the benefit of the plaintiff's advances, and as she has made no offer of restitution, it would be inequitable to decree the cancellation of the bond and mortgage.

The judgment must be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.