CHRISTIAN BLINN, Appellant, *v.* JULIA SCHWARZ et al., Respondents.

1. CONTRACTS EXECUTED BY INSANE PERSONS ARE VOIDABLE AT THEIR ELECTION UPON RECOVERING THEIR REASON. The deed of a person actually insane, but never so adjudged, is not absolutely void, in the sense of being a nullity, but is voidable at his election upon recovering his reason, and may then be ratified or avoided at his pleasure, the deed having force and effect until the option to declare it void is exercised. The authorities upon the subject of void and voidable contracts collated and discussed.

2. INSANITY OF GRANTOR NOT MATERIAL WHEN DEED EXECUTED BY HIM HAS BEEN RATIFIED. The fact that the grantor was insane at the time of the execution of a deed is not controlling in an action of ejectment brought by him to recover the property conveyed, if after regaining his reason he ratified the deed, since he may ratify or avoid it at his election.

3. EVIDENCE TENDING TO SHOW RATIFICATION ADMISSIBLE IN ACTION OF EJECTMENT TO RECOVER PROPERTY CONVEYED BY THE DEED. The complaint in a previous action brought by the plaintiff against his agent appointed by powers of attorney executed while he was insane, who had received the consideration for the property conveyed, the allegations of which complaint would have permitted the recovery from him of the purchase price, which action was pending and undetermined at the time of the trial of the ejectment action, is competent evidence therein, since the plaintiff could not sue for both the money and the land; and, having elected to sue for the money, the allegations of the complaint in the former action are material upon the question of ratification.

*Blinn* v. *Schwarz*, 63 App. Div. 25, affirmed.

(Argued January 8, 1904; decided January 26, 1904.)

APPEAL from a judgment entered December 7, 1901, upon an order of the Appellate Division of the Supreme Court in the first judicial department, overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendants upon a verdict.

By her answer to a complaint in ejectment the defendant Julia Schwarz denied that she wrongfully withheld the land in question from the plaintiff, and alleged that she was in possession thereof by virtue of a deed executed to her by him

on the 31st of March, 1890, in consideration of $78,000 paid
by her and to the extent of $54,000, applied to discharge
mortgages that were liens on the property.  The plaintiff by
his reply alleged that he had no knowledge or recollection of
having signed or acknowledged the deed purporting to con-
vey said property; denied that he ever in person or other-
wise delivered the deed or received the consideration; averred
that he was insane at the date of the alleged conveyance, and
that the said Julia Schwarz took advantage of his condition
by procuring his signature " to a certain paper purporting to
be a deed of the premises " described in the complaint.

On the 26th of September, 1887, the premises in question
were conveyed to the plaintiff, who entered into possession
thereof and so remained until March 31st, 1890.  On the
same day he made and delivered to his grantor six purchase-
money mortgages upon the property to secure the sum of
$65,000 in all.

On the 31st of March, 1890, a deed dated and acknowledged
that day, made by the plaintiff and his wife to the defendant
Julia Schwarz, purporting to convey the premises described
in the complaint, was recorded in the office of the register of
the county of New York.   Since that date Julia Schwarz has
been in possession of said premises, " claiming to be the owner
thereof under and pursuant to the tenor of said deed."

Evidence was given tending to show that " from about the
first of January, 1890, until within a few months from the time
he was discharged from a sanitarium in 1895 " the plaintiff was
insane, his mind a blank, " and he knew nothing whatever of
signing any papers or of anything else which occurred during
that time."   It does not appear that an inquisition was made
or that the plaintiff was ever adjudged insane.

The plaintiff was sane when he brought this action on the
25th of October, 1897, and also when, prior thereto, he
brought an action, which is still pending and undetermined,
against one Henry Ungrich, alleging in his complaint therein,
verified July 2d, 1897, that on or about the 17th of February,
1890, he was engaged in the business of buying and selling

real estate, and owned thirty-five parcels of real property in the city of New York, including those in question; that at the date last named, being obliged, by ill-health, to withdraw from business, he appointed said Ungrich "his agent and trustee," through a written power of attorney, "the exact manner and form" of which he was unable to state; that on the 16th of April, 1890, he executed a second power of attorney, a copy of which was annexed to said complaint, and reappointed said Ungrich his "agent and trustee" with further and enlarged powers to act for him in the management of his business; that said Ungrich accepted the agency and trust, entered into the possession, control and management of the property, including that now in question, and from time to time sold and disposed of "certain of the said property, if not all," and received the consideration therefor; that said Ungrich abused the trust and confidence reposed in him by the plaintiff and confided to him by said powers of attorney by selling some of the property to his relatives at less than it was worth and other parcels at prices below what at or about the time he was actually offered for the same; that he failed to use due diligence and discretion and acted in a manner injurious to the plaintiff's interests and rights; that he retained and used the moneys received by him for his own use and benefit and made large and secret profits in the management of the plaintiff's property to his great damage; that said powers of attorney had never been revoked and said Ungrich was still in full charge of the affairs of the plaintiff that were intrusted to him at the time of the execution of the first power of attorney; that he had never paid to the plaintiff any of the moneys received by him for the property sold and had never accounted therefor or for any of his acts or dealings in connection therewith; that the plaintiff was not able to resume active participation in business affairs until on or about October, 1895, since which time he had frequently demanded of said Ungrich an accounting for the moneys received by him and for his acts and dealings in the execution of the agency and trust conferred upon him;

that an accounting was necessary upon which " there will be found to be equitably due and owing from (said Ungrich) to this plaintiff a large amount of money which should be decreed to be paid by (him) to plaintiff." The prayer for judgment was " that the defendant be directed to make discovery of and to account to plaintiff for the moneys and other valuable considerations received by (him) in trust for the plaintiff while acting as agent and trustee of plaintiff and had and retained by him for his own use and benefit and for (his) profits made in the course of his management of plaintiff's property and business and for all of his transactions as agent and trustee of plaintiff and for such other and further relief," etc.

The defendant Schwarz paid to said Ungrich $77,750, as consideration for the deed to her of the property in question, and there was no evidence of a return or offer to return the same to her, or that she had notice of the plaintiff's condition when she made the payment. By a power of attorney dated, executed and acknowledged April 16th, 1890, the plaintiff appointed Henry Ungrich his true and lawful attorney " to grant, bargain and sell all and every, the real estate and property which I own, have owned and possessed, wheresoever situate or any part thereof, for such price and upon such terms as to him shall seem meet, and for me and in my name to make, execute, acknowledge and deliver good and sufficient deeds and conveyances for the same ; " to borrow such sum or sums of money " upon the security of my said estate and property " as he shall from time to time deem proper and to execute bonds and mortgages to secure the same ; to lease the property, and exercise general control and supervision of the same ; to prevent trespass, waste or other injury thereto ; to purchase and sell for cash or on credit all such articles and property as he may deem useful and proper as connected with my estate, business and property, both real and personal ; to sign and endorse notes and drafts, state and adjust accounts, sue and compromise claims and " take the general management of my affairs, property and business."

The power of attorney, dated February 14th, 1890, was sub-

stantially to the same effect, as to the right to sell, convey, borrow, mortgage, sue, compound and lease; "to exercise the general control and supervision of all my lands and tenements * * * and to do all and every act and thing in and about my said property for the keeping, conveyancing, mortgaging and leasing of the same as I might or could do."

At the close of the evidence the court directed a verdict in favor of the defendants and against the plaintiff. To this direction the plaintiff excepted and asked to have the question of the plaintiff's insanity at the time of the making of the deed to the defendant Schwarz submitted to the jury, but the court declined and an exception was taken. No other request or motion was made by or in behalf of either party. The court ordered the exceptions to be heard in the first instance by the Appellate Division, which overruled the same and ordered judgment to be entered upon the verdict in favor of the defendants.

*George Newell Hamlin, George B. Lester* and *Harmon S. Graves* for appellant. The court erred in directing a verdict for the defendants on the ground that the commencement and pendency of the action against Henry Ungrich constituted ratification by plaintiff of the deed to defendant Schwarz and the receipt of the consideration by Ungrich, or on the ground that the pendency of that action was an election of remedies or an estoppel. (*McDonald* v. *M. R. Co.,* 167 N. Y. 69; *Riggs* v. *Am. Tract Soc.,* 84 N. Y. 330; *Merritt* v. *Merritt,* 43 App. Div. 68; *Hardy* v. *Berger,* 76 App. Div. 393; *Goodyear* v. *Adams,* 24 N. Y. S. R. 31; 119 N. Y. 650; Mechem on Agency, § 372; *Doubleday* v. *Cress,* 50 N. Y. 410; *C. T. Co.* v. *Folsom,* 38 App. Div. 295; *Walker* v. *S. T. Co.,* 40 App. Div. 55; *Higgins* v. *Moore,* 34 N. Y. 417; *Dean* v. *I. T. Co.,* 47 Hun, 319; *Harrison* v. *Ross,* 12 J. & S. 230.) There being no ratification, election or estoppel, there was sufficient evidence of plaintiff's incapacity to entitle plaintiff to go to the jury upon the question of his capacity to make the deed, and it was error to refuse to sub-

mit this question to the jury. (*Riggs* v. *Am. Tract Society*, 84 N. Y. 336; *Ins. Co.* v. *Rodel*, 95 U. S. 238; *Colt* v. *S. A. R. R. Co.*, 49 N. Y. 671; *Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 345; *McDonald* v. *M. R. Co.*, 167 N. Y. 66; *Stone* v. *Flower*, 47 N. Y. 566; *R. & K. F. L. Co.* v. *Raymond*, 158 N. Y. 584; *F. Nat. Bank* v. *Dana*, 70 N. Y. 108; *Bank* v. *Weston*, 159 N. Y. 208; *Place* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 347.)

*Edward W. S. Johnston* and *Edward P. Orrell* for respondents. Whether the plaintiff was sane or insane at the time of the execution and delivery of this deed and of the powers of attorney aforesaid, and whether such a deed be void or voidable, plaintiff by his action against his attorney in fact has elected his remedy and has elected his rights, and has ratified or adopted the deed and is estopped from maintaining this action. (*Boots* v. *Ferguson*, 46 Hun, 126; *Birch* v. *Hall*, 19 N. Y. S. R. 27; *Washburn* v. *Benedict*, 46 App. Div. 484; *Ferguson* v. *H., E. & W. T. Ry. Co.*, 11 S. W. Rep. 347; *Bunn* v. *Postell*, 107 Ga. 490; *Robb* v. *Vos*, 155 U. S. 13; *Blaisdell* v. *Leach*, 35 Pac. Rep. 1019; *Fowler* v. *B. S. Bank*, 113 N. Y. 452; *Sanger* v. *Wood*, 3 Johns. Ch. 416; *Gardner* v. *Ogden*, 22 N. Y. 327.) Plaintiff had no right to maintain this action in ejectment, whether he was insane or not. His deed to the defendant Schwarz was at the most only voidable and not void, and was a complete defense against such an action. (*Riley* v. *Carter*, 25 Atl. Rep. 669; *Riggan* v. *Green*, 80 N. C. 236; *Miles* v. *Lingerman*, 24 Ind. 387; *Wait* v. *Maxwell*, 5 Pick. 217; *Dennett* v. *Dennett*, 44 N. H. 538; *Eaton* v. *Eaton*, 37 N. J. Law, 108; *Blakeley* v. *Blakeley*, 33 N. J. Eq. 508; *Snowden* v. *Dunlavey*, 11 Penn. St. 525; *Fitzgerald* v. *Reed*, 9 S. & M. 94; *Allen* v. *Berryhill*, 27 Iowa, 540; *Elston* v. *Jasper*, 45 Tex. 409.)

VANN, J. The deed in question and both powers of attorney were executed by the plaintiff when he was of unsound mind and incapable of attending to his affairs, as the jury

might have found. About two years and a half after he recovered his mind he sued his agent and trustee for a general accounting, and the allegations of his complaint would have permitted the recovery, among other moneys, of the sum of $77,750 paid by the defendant Julia Schwarz upon the purchase of the property in question. The plaintiff did not allege in his complaint in that action that his agent had received that sum, or any specific money, and it does not expressly appear that he knew when he brought the action what sums had been paid, or under what circumstances, or for what property. After that complaint had been put in evidence by the defendants, however, the burden was upon the plaintiff of explaining the same, or of showing what he could in answer thereto, but the record contains nothing upon the subject. As he had never been adjudged a lunatic, he could not proceed on the assumption that he was insane, as he alleged, for that was a question for the jury. The lapse of time between his recovery and his act has an important bearing upon what he is presumed to have known. While neither power of attorney specifically covered the receipt of money paid in consideration of property conveyed by the plaintiff in person, still the general powers were broad enough to authorize the agent and trustee to collect the same.

Athough the plaintiff, in the action now before us, excepted to the direction of a verdict in favor of the defendants, he did not rest there but asked to have the question of his insanity at the time of the making of the deed to Mrs. Schwarz submitted to the jury. He did not ask to go to the jury on the whole case, or upon any other question, and by requesting that the question of insanity only should be submitted, he waived the right to have the question of ratification, so far as it was one of fact, sent to the jury. The evidence warrants the conclusion that the plaintiff ratified the act of his agent as well as his own with reference to the deed under consideration, provided the deed and the powers of attorney were not absolutely void, but merely voidable. As we must assume that the plaintiff was insane when he executed those instruments we

thus reach the principal question presented by the record, as to whether the contract of a person actually insane, but never so adjudged, is void, or merely voidable, at his election.

Using the term in its exact sense and limiting it to the parties themselves, a void contract is binding upon neither and cannot be ratified. Even if ratified in form by both, it would be a new contract and would take effect only from the date of the attempt at ratification. A voidable contract, on the other hand, binds one party but not the other, who may ratify or rescind at pleasure. The word " void," however, is used both in statutes and in decisions of the courts, with several meanings and seldom with the exact one. This is illustrated by an opinion of the Court of Errors, from which we extract the following : " A thing is void which is done against law, at the very time of doing it, and where no person is bound by the act; but a thing is voidable which is done by a person who ought not to have done it, but who, nevertheless, cannot avoid it himself, after it is done. Bacon classes under the head of acts which are absolutely void, to all purposes, the bond of a *feme covert*, an infant, and a person *non compos mentis*, after an office found, and bonds given for the performance of illegal acts. He considers a fraudulent gift void, as to some persons only, and says it is good as to the donor, and void as to creditors. Whenever the act done takes effect as to some purposes, and is void as to persons who have an interest in impeaching it, the act is not a nullity, and, therefore, in a legal sense, is not utterly void, but merely voidable. Another test of a void act or deed is, that every stranger may take advantage of it, but not of a voidable one. (2 Leo. 218 ; Viner, tit. Void and Voidable, A. pl. 11.) Again ; a thing may be void in several degrees : 1. void, so as if never done, to all purposes, so as all persons may take advantage thereof; 2. void to some purposes only ; 3. so void by operation of law, that he who will have the benefit of it, may make it good." (*Anderson* v. *Roberts*, 18 Johns. 516, 527.)

Contracts to defraud creditors, those made under duress or while one of the parties was intoxicated and the like, are not

void but voidable at the option of the injured party, while contracts to do acts forbidden by law, such as the commission of crimes, or not to do acts required by law, such as refusing to obey a subpœna, are utterly void. So are contracts of insane persons, "made after an inquisition and confirmation thereof, but not when made before office found, even if within the period over-reached by the finding of the jury, although they are presumed to be so until capacity to contract is shown by satisfactory evidence." (*Hughes* v. *Jones,* 116 N. Y. 67, 73.)

In *Van Deusen* v. *Sweet* (51 N. Y. 378), relied on by the plaintiff, the head note is misleading, for the learned judge writing the opinion used the word "void" with a flexible meaning, as on page 384 he says that the deed then in question "was not merely voidable, but absolutely void," and in the third sentence following that "it would have been competent for the plaintiff to have shown that the deed was voidable, if that had been necessary to defeat the defendant's claim. (See *Phillips* v. *Gorham,* 17 N. Y. 270 ; *Lattin* v. *McCarty,* 41 id. 107.)" It is evident from reading the entire opinion that the court had in mind the remedy of the plaintiff at law when it used the former expression, and the rights of the parties in equity when it used the latter. This case has produced some confusion, because, owing to the syllabus, it has been misunderstood.

In *Goodyear* v. *Adams* (5 N. Y. Supp. 275 ; 119 N. Y. 650), also relied on by the plaintiff, it was held that a deed executed by an insane person is absolutely void at law, but if taken in good faith and for a valuable consideration may be upheld in equity.

The question before us is not whether the deed is void at law, but whether it is void in the extreme sense of the word, not only at law but in equity, so that there was nothing for ratification to act upon. One of the defenses pleaded by the defendant Schwarz is of an equitable nature, as she alleged the payment of a consideration of $78,000 and that $54,000 of that amount was applied upon the mortgages on the property which were satisfied of record.

I think the true rule was suggested by the great English commentator, when he said that " Idiots and persons of non-sane memory, infants and persons under duress, are not totally disabled either to convey or purchase, but *sub modo* only, for their conveyances and purchases are voidable but not actually void." (2 Black. Com. 291.)

Chancellor Kent uses similar language (2 Kent's Com. 451); and other writers lay down substantially the same rule. Mr. Wharton, after a full discussion of the subject, says that " The true rule is that a voidable deed is capable of ratification, and if a grantor, when insane, makes a deed, and should afterwards in a lucid interval, well understanding the nature of the instrument, ratify and adopt it as his deed, as by receiving the purchase money due under it, this would give effect to it and render it valid in the hands of the grantee." The learned author cites many authorities in support of this position. (1 Wharton's Law of Contracts, § 107, p. 138.)

In Bishop on Contracts (§§ 873 and 874) it is said : " Plainly, in justice, the same party ought ordinarily to be holden, whether he knew of the insanity or not, if the other or his representative so elects. The authorities on this point may be conflicting, but such is believed to be the better doctrine. This last would make the contract voidable, whatever the courts should hold its other consequences to be. * * * In general, this contract, like an infant's, may be ratified or disaffirmed by the insane party's guardian or committee, or by himself during a lucid interval or on becoming sane, or after his death by his proper legal representative."

In Clark on Contracts (p. 268) it is laid down " as a general or almost universal rule " that the contracts of an infant or insane person " are not void, but simply voidable at his option and they are binding on the other party if he elects to hold him."

In Lawson on Contracts (§ 161) the rule is stated in this language : " The contract of an insane person is voidable at his option, and, therefore, one may prove in avoidance of his contract that he was *non compos mentis* when he entered into

it, although a similar privilege is not allowed to the party with whom he contracted. The insanity to avoid the contract must be an absolute incapacity to understand the effect of the act, and, therefore, mere weakness of mind, or partial insanity or monomania, unconnected with the subject-matter of the contract, is not sufficient, though a moderate degree of incapacity may be sufficient where the transaction is accompanied with fraud, imposition or duress. Where the person has been adjudged a lunatic and placed under guardianship, contracts made by him thereafter are absolutely void, unless the guardianship has been abandoned, or no guardian has been appointed, or the guardian appointed has resigned."

We will close our quotations with the following from Pollock's Principles of Contract (p. 81): "The contract of a lunatic or drunken man who by reason of lunacy or drunkenness is not capable of understanding its terms or forming a rational judgment of its effect on his interests is not void, but only voidable at his option ; and this only if his state is known to the other party." (See, also, Shelford on Lunacy, 419; Story's Eq. Jur. 228; 28 Am. & Eng. Encyc. [1st ed.] 478 ; 9 id. [2d ed.] 119 ; Addison on Contracts [6th ed.], 1033 ; Smith on Contracts [5th ed.], 343 and 344.)

Although the decisions of the courts upon the subject are not uniform, according to the weight of authority in this state, as well as elsewhere, the deed of a lunatic before office found is voidable only and not void. (*Hughes* v. *Jones*, 116 N. Y. 67, 73 ; *Valentine* v. *Lunt*, 115 N. Y. 496 ; *Mutual Life Ins. Co.* v. *Hunt*, 79 N. Y. 541, 545 ; *Ingraham* v. *Baldwin*, 9 N. Y. 45, 47 ; *Jackson* v. *Gumaer*, 2 Cow. 552, 568 ; *Fitzhugh* v. *Wilcox*, 12 Barb. 235, 237 ; *Canfield* v. *Fairbanks*, 63 Barb. 461, 465 ; *Matter of Beckwith*, 3 Hun, 443 ; *Riley* v. *Albany Savings Bank*, 36 Hun, 513, 519 ; 109 N. Y. 669 ; *Brown* v. *Miles*, 61 Hun, 453, 456 ; *Baldwin* v. *Golde*, 88 Hun, 115 ; *Wagner* v. *Harriott*, 10 N. Y. St. Rep. 709 ; *Merritt* v. *Merritt*, 43 App. Div. 68, 70 ; *Loomis* v. *Spencer*, 2 Paige, 153 ; *L'Amoreux* v. *Crosby*, 2 Paige, 427 ; *Allis* v. *Billings*, 6 Met. 415 ; *Lancaster Co. Nat. Bk.* v. *Moore*, 78

Pa. St. 407; *Long* v. *Long,* 9 Md. 348; *Matthiessen &
Weichers Refining Co.* v. *McMahon,* 38 N. J. Law, 536;
*Wilder* v. *Weakley,* 34 Ind. 181; *Behrens* v. *McKenzie,* 23
Iowa, 333; *Molton* v. *Camroux,* 2 Exch. 487; 4 id. 17;
*Beavan* v. *M'Donnell,* 9 Exch. 309.)

We think the rule laid down by these cases is sound and in
the interest of those afflicted with disease of the mind. The
deed of a lunatic is not void, in the sense of being a nullity,
but has force and effect until the option to declare it void is
exercised. The right of election implies the right to ratify,
and it may be greatly to the advantage of the insane person to
have that right. If the deed or contract is void, it binds
neither party, and neither can derive any benefit therefrom,
but if voidable, the lunatic, upon recovering his reason, can
hold on to the bargain if it is good and let go if it is bad.
This option is valuable, for it gives him the power to do as he
wishes, and to bind or loose the other party at will. Upon
the record before us, therefore, even if the plaintiff was
insane at the date of the deed, there was no error in directing
a verdict for the defendants.

The only exception, aside from those involved in the fore-
going discussion, was taken to the admission in evidence of
the complaint in the action brought by the plaintiff against
his agent, subject to the objection that it was immaterial.
That action was brought to recover the purchase price of the
very premises sought to be recovered in this. It was pending
when this action was commenced, and was pending at the
time of the trial. As was said in the prevailing opinion below,
the defendants had "the right to show any facts to establish
that at the time of the trial the deed was plaintiff's deed."
The plaintiff could not recover the land and money both, and
he was in the act of trying to recover the money when his
action to recover the land was brought as well as when it was
tried. He made no request to go to the jury as to his knowl-
edge or want of knowledge when the first action was com-
menced. Having the right to sue for the money or the land,
he sued for both, and, upon the trial of the second action, it

was material upon the question of ratification to show what he alleged in his complaint in the first.

Without considering the question, so ably discussed in the concurring opinion below, whether the plaintiff, in any event, should have resorted to equity for relief, we think the record shows no reversible error, and that the judgment should, therefore, be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.