ELSIE FINCH and Another, as Committee of the Person and Estate of HOWARD FINCH, an Incompetent Person, and Another, Plaintiffs, *v.* DAVID GOLDSTEIN, Defendant.

Supreme Court, Greene County, February, 1926.

Insane persons — contract of sale by representatives of lunatic provided deed should be legally executed on behalf of lunatic — mortgage given by purchaser is without consideration where deed was executed by lunatic individually and not in compliance with law regulating transfers by lunatics.

A mortgage is without consideration and the complaint in an action to foreclose said mortgage should be dismissed, where it appears that after plaintiffs, as the personal representatives and next of kin of the owner of the property, who had been committed to an insane asylum, and the defendant herein executed a contract for the sale of said property which contained a provision by the terms of which plaintiffs agreed that they would institute proceedings for the proper sale of said premises, they nevertheless procured the signature of said lunatic to a deed without compliance with the rules and regulations of the State Hospital Commission, and at a time when no committee of the person and estate of said lunatic had been appointed and no order of a judge of a court of record permitting the execution of said deed had been obtained. The deed, having been executed contrary to law, was a nullity and afforded no consideration for the bond and mortgage herein.

ACTION to foreclose mortgage on real estate.

*George F. Kaufman,* for the plaintiffs.

*Irving B. Feinberg* [*Michael Gold* of counsel], for the defendant.

NICHOLS, J. September 16, 1920, one Howard Finch, a resident of Greene county, was duly committed to the Hudson River State Hospital at Poughkeepsie as an insane person, upon the petition of Winnie Finch, one of the plaintiffs and a brother of said Howard Finch. One Ambrose Jones was attorney for Winnie Finch in that proceeding and was also the notary public who took the acknowledgment to said petition for the commitment of said

Supreme Court, February, 1926.      [Vol. 126

Howard Finch and was also the attorney for said Winnie Finch in procuring the claimed execution of the deed in question. The plaintiff Elsie Finch is the mother of said Howard Finch, and the said Winnie Finch and Elsie Finch comprise the only heirs at law and next of kin of said Howard Finch who is a widower and has no children.

The said Howard Finch at the time of his commitment to said hospital was suffering from paresis and has remained an inmate of said hospital ever since his commitment. The testimony of Doctor Thompson, one of the physicians at said hospital, who has had the care of said Howard Finch, was that on no day since said Howard Finch was received at the hospital has he had sufficient capacity to understand the nature of any legal documents whatever. No committee of the person and estate of the said Howard Finch was ever appointed until April 4, 1925, when such a committee was appointed by the Supreme Court pursuant to the provisions of section 1374 of the Civil Practice Act without any inquisition being had.

Howard Finch had been devised a farm of 237 acres of land in the town of Cairo, Greene county, by his father previous to his commitment to said hospital, which farm was subject to his mother's right of dower therein. Title was vested in him and remained in him until June 13, 1921, on which date one Ike Cooper, a real estate broker, in company with his attorney, one Orliff T. Heath, and the defendant called upon Winnie Finch and negotiated with him for the purchase of said farm. Defendant Goldstein was informed that Howard Finch, the owner, was insane and confined in the State hospital at Poughkeepsie. An agreement for the purchase of said farm was then made wherein the parties of the first part are named as follows: " Elsie Finch and Winnie Finch, as the personal representatives and next of kin of Howard W. Finch, an *alleged* incompetent person, of Cairo, Greene County, N. Y.," parties of the first part, and this defendant, David Goldstein, was named as party of the second part. Goldstein paid a deposit of $500 at the time of the execution of said contract, agreed to pay $4,250 on the delivery of the deed to said farm and to give a bond and mortgage of $9,000 on said premises for the balance of the purchase money. Besides said real property said contract covered some personal property on the premises. This contract contained three clauses as follows: " This contract is made under the express agreement that the parties of the first part shall institute proceedings to sell said premises as early as possible and this sale is made subject to the order of the court having jurisdiction over the person and property of the said Howard Finch an alleged

incompetent person." The 2d clause referred to reads as follows: " This sale is made through the agency of Ike Cooper and his commission shall be five per cent of the purchase price which commission shall be paid by the parties of the first part." The 3d mentioned clause reads as follows: " The said parties of the first part on receiving such payment at the time and in the manner above mentioned shall at their own proper cost and expense execute, acknowledge and deliver or cause to be executed, acknowledged and delivered to the said party of the second part or to his assigns a proper deed to be executed by the committee to be appointed for the said Howard Finch," etc. No time was fixed in said contract as the date for closing title.

Upon the trial Heath was a witness and denied that he had ever been employed by the defendant and paid by the defendant. The defendant insisted that he had employed Heath as his attorney. Heath testified that on the next day after the execution of the contract he had a conversation with the defendant and that defendant said that he was very anxious to get into possession of the property as the summer boarding season was approaching and wanted to know in effect how soon he could obtain title to said premises; and Heath advised defendant that a deed from said lunatic, Elsie Finch, his mother, and Winnie Finch, his brother, would give him ample protection. Heath did not state to him that such deed would be a defeasible deed in a suit by said lunatic or his representatives. The defendant agreed to take such a deed. No attempt was made to have a committee of the person and estate of the incompetent appointed or to comply with the terms of said contract with reference thereto. This testimony is not denied by the defendant, although the defendant testified that as soon as the contract was executed he returned to the city of New York and remained there until the time of the closing of title. Heath communicated these facts to Ambrose Jones, and on June 29, 1921, Ambrose Jones and Winnie Finch went to the Hudson River State Hospital at Poughkeepsie where the said lunatic, Howard Finch, was then confined, and said Howard Finch signed his name to said deed in the presence of Jones and said Jones claims to have taken the acknowledgment of the said lunatic on the same day at said hospital, Winnie Finch being present during such proceeding. No order of a judge of a court of record permitting said deed to be executed was procured by said Winnie Finch or Ambrose Jones. No medical superintendent or assistant or officer in charge of the lunatic was present at the time of the claimed execution of said deed. In fact both Jones and Winnie Finch conceded on the trial that none of the hospital authorities

knew of the claimed execution of said deed. On the same day Winnie Finch and Elsie Finch executed said deed and acknowledged same before said Jones. The defendant was then notified by said Heath to come to Catskill and close title, which he did on June 30, 1921, paying $4,250 in cash and giving a bond and mortgage for $9,000 to secure the balance of the purchase money. Nothing was said by any one of the manner in which said lunatic was claimed to have executed said deed. The defendant left said deed with Heath who caused same to be recorded on July 2, 1921, and Heath retained possession thereof until about the month of June, 1924, when the defendant, having a tentative purchaser for said farm, sent to Heath for said deed, and the proposed purchaser on discovering that the deed, being one given by a lunatic, was to say the least a defeasible deed, refused to complete the purchase. Goldstein, who had paid the interest on the mortgage according to the terms thereof, refused to make further payments and this action in foreclosure was commenced.

The deed of the lunatic, if it had been legally executed, was voidable at the election of said lunatic upon recovering his reason. The defendant could not avoid the deed for that reason where the deed was executed before office found. (*Blinn* v. *Schwarz*, 177 N. Y. 252; *Smith* v. *Ryan*, 191 id. 452.)

On April 5, 1911, the State Hospital Commission adopted general order No. 10, which contained among other things, the following:

" (b) No insane person shall be permitted to sign any bill, check, draft or other evidence of indebtedness or to execute any contract, deed, mortgage or other legal conveyance, except upon the order of a judge of a court of record, which shows that the judge had notice of the fact that the person whose signature is sought to be obtained was at the date of the order an inmate of an institution for the care and treatment of the insane.

" At the time of the execution of the order the following proceedings must be had:

" The medical superintendent, one of his assistants or the officer in charge must be present at the time of the execution of the order, and must see that its terms are strictly complied with.

" The substance of the order and the proceedings had thereunder must be entered in the history of the patient case-book.

" A certified copy of the order must be filed with the papers relating to the patient, a copy of the same, together with a notice of the proceedings had thereunder, must be forwarded at once to the committee of the person and property, if there be one, or, if there be no committee, then to the nearest known relative or next friend of the patient.

" The original orders are required by statute to be filed with the clerk of the court.

" 2. The medical superintendent or officer in charge is hereby directed to keep a copy of these orders posted conspicuously in the general reception room and office of each institution for the care and treatment of the insane."

Subdivision 12 of section 45 of the Insanity Law, as amended by chapter 121 of the Laws of 1912,* contains, among other things, the following:

" 12. A committee consisting of three superintendents to be appointed by the commission shall establish by-laws, rules and regulations governing the appointment and duties of officers and employees of all the state hospitals, and for the internal government, discipline and management of the same. Such by-laws, rules and regulations shall be subject to the approval of the commission and of the quarterly conference of superintendents and managers with the commission as provided in section forty-eight of this act. Such by-laws, rules and regulations shall be uniform for all the state hospitals, and shall not be inconsistent with the provisions of this chapter nor with the provision of the civil service law and the rules and regulations established thereunder. The by-laws, rules and regulations established by the state commission in lunacy and in force on the first day of April, nineteen hundred and five, shall continue in force except as they may hereafter be modified, amended or repealed as provided by this chapter."

At the time of the claimed execution of the deed by the lunatic, Howard Finch, no pretense of a compliance on the part of said Jones and Winnie Finch with the terms of said general order No. 10 was made. The execution of said deed was made without the knowledge of the hospital authorities and in defiance of said order, and when the hospital authorities learned of the facts, they wrote a letter to Jones demanding an explanation of his conduct, to which letter he never replied. Jones knew of the existence of this order or is presumed to know of its existence.

The order was for the protection, not only of Howard Finch and his estate, but also for the protection of all persons like defendant who might have dealings with a lunatic confined in a State hospital. This was not a case of a man dealing with an incompetent person like a lunatic or a minor where he was willing to take a chance of a defeasance because of extraordinary profits offered. The defendant had insisted in the first instance in the contract for the appointment of a committee for the incompetent

---

* Since amd. by Laws of 1924, chap. 550.— [REP.

and steps to be taken to sell the interest of the said incompetent in the real property. Owing to the advice of Heath, who was acting for the broker and who desired to husband his commission at once, the defendant was willing to take a deed such as Heath advised him to take without knowing that it was a defeasible deed and might be voided many years afterward by the recovery of Howard Finch to his reason, or in any action that might be brought by his legatees, devisees or heirs at law upon his decease. Howard Finch had lived for four years in the hospital and might live many more years. While, according to Heath, the defendant had waived the condition which he had had inserted in the contract, purported to be executed by the lunatic, he certainly did not waive the condition that the deed should be executed by the said lunatic in conformity with the rules and regulations of the State Hospital Commission and not in defiance of said rules; that the execution of said deed in defiance of said rules was known to both Winnie Finch and his attorney, Ambrose Jones, and was unknown to the defendant. This deed having been executed in defiance of these rules was executed in defiance of law and was contrary to law and a nullity and affords no consideration for the bond and mortgage in suit. If necessary, the defendant's answer may be amended so as to make the pleadings conform to the proof. The deed being a nullity and there being no consideration for the bond and mortgage, the complaint must be dismissed, with costs and the defendant recover judgment for such sums as he may be able to show. And for that purpose I appoint Orin Q. Flint of Athens, N. Y., a referee to take proof of the defendant's counterclaim and report the same to me with his opinion thereon; and on the coming in of such report, defendant recover of the plaintiffs said amounts.