## PARSONS v. TELLER.

(Supreme Court, Appellate Division, Fourth Department. March 7, 1906.)

1. CONTRACTS—CONSIDERATION—SEAL—ACKNOWLEDGMENT.
   Where a contract to pay for services was under seal and acknowledged the receipt of $1, it implied a consideration which could only be rebutted by extraneous proof.
   [Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 406.]

2. SAME—SUFFICIENCY OF CONSIDERATION.
   Where plaintiff had faithfully served deceased during her childhood, while she was being reared in affluence, having a large estate in her own right, a contract voluntarily made between them by which deceased agreed in consideration of such service to pay plaintiff the sum of $1,800 a year during plaintiff's life, was not voidable because such amount was in excess of the reasonable value of the services rendered.

3. INFANTS—CONTRACTS—RATIFICATION.
   Plaintiff had cared for and been the constant companion of deceased from the time deceased was six years old until her marriage at the age of 19, after which deceased, while an infant, joined by her husband and father, executed a contract superseding a prior arrangement and providing that plaintiff should be paid for her services the sum of $1,800 per annum during the remainder of her natural life. Deceased had a large estate in her own right, some of which was located in New York, and after she became of age payments were made from the income of her estate to plaintiff, both by deceased's husband and by her New York agent. Held, that such payments constituted a ratification of the contract by deceased after she became of age, so as to render the same enforceable against her estate.
   [Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Infants, §§ 140, 141.]

**4. CONTRACTS—VALIDITY—WHAT LAW GOVERNS.**

Where a contract made by an infant for plaintiff's services was executed in New York, was expected to be performed there, and a large portion of the services were performed in that state, where the agreement was also confirmed after the infant became of age, the agreement was governed by the New York laws.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 2.]

**5. WILLS—ELECTION.**

Where, after deceased had ratified a contract made during infancy to pay plaintiff an annuity of $1,800 for services rendered, deceased executed a will by which she directed her trustees to invest £8,000 and pay the income thereof to plaintiff for life, an action by plaintiff to enforce the contract as against deceased's administrator with the will annexed amounted to an election to take under the contract and to waive the will.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 2050.]

McLennan, P. J., and Nash, J., dissenting.

Appeal from Trial Term, Erie County.

Action by Sara Berwick Parsons against George R. Teller, as administrator of Daisy Fletcher King Smith. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The plaintiff is a maiden lady residing in Buffalo. The defendant's testatrix, in her early girlhood, by name Daisy King, lived with her grandmother, Mrs. Pratt, in that city until the latter's death in 1885, when the child was 13 years of age. In 1878 the plaintiff also became a member of Mrs. Pratt's family, remaining in the household until 1884, assisting in the care and education of Daisy, whose mother had died before the child was cared for by the grandmother. While an inmate of Mrs. Pratt's household, the plaintiff was paid nothing for her services, but was supported as one of the family. Shortly after the death of Mrs. Pratt the girl went to New York and lived with the plaintiff for two years. They then took a six-month trip to Europe, and upon their return Miss King lived in a hotel or apartment house in New York and the plaintiff lived with her. Whether the plaintiff was paid for her services while abroad does not appear. She was incompetent to testify on the subject in her own behalf, and the defendant did not see fit to cross-examine her or give any proof in relation to the matter. In December, 1890, Miss King, then 18 years of age, intermarried with Willoughby Smith, a subject of Great Britain, and thereafter they resided in England until her death. Mrs. Smith, and her husband also, possessed considerable wealth. The relations existing between Mrs. Smith and the plaintiff were affectionate, and after the marriage Miss Parsons spent most of her time in England and Paris, and was a frequent and welcome visitor at the Smiths'. On March 1, 1888, the plaintiff wrote the following letter to Miss King: "March 1st, 1888. My Dear Daisy: As you have often expressed your willingness to give me the sum of eighteen hundred dollars per year until you arrive at the age of twenty-one years, if you will write me to this effect I shall be very grateful, Yours faithfully, Sara B. Parsons. To Miss Daisy F. King." Miss King, then 16 years of age, replied as follows: "503 Fifth Ave., N. Y., Mch. 2, 1888. My Dear Sara: Your letter of the 1st inst. received. I am perfectly willing to give you the sum therein mentioned ($1,800 per year) until I reach the age of twenty-one years. I think I can say in all truth and sincerity that there are few with whom I could have been constantly day and night as I have been with you and always have found them the same, true, devoted, faithful, fond, always willing to share and sympathize with me in my sorrow or joy as the case may have been. I can assure you that I appreciate all your kindness in past years, and if at any time I can aid you or yours in any way it will only be a great pleasure to me to do so if such an occurrence may present itself. I trust we may always be together, that is, until either may find the proper person, one to whom we may give our heart, and even after that. I

agree to your offer and with many, many thanks, I am, your sincere friend. D. F. King." A few days after her marriage Mrs. Smith, her husband, and father entered into an agreement in writing with the plaintiff. The agreement recites that, "whereas" Miss Parsons "heretofore entered the employment of the said Daisy King Smith, then Daisy Fletcher King, upon the agreement that such payment should be continued whether so employed or not, or she be otherwise provided for in case of the marriage of said Daisy Fletcher King," and then recites the marriage with Smith, her intention to live in England, and, desiring "to carry into effect such agreement and understanding" continues "now therefore, in consideration, of the premises, the services heretofore performed by said Parsons and of one dollar to them in hand paid, the receipt of which is hereby acknowledged," the said parties covenanted and agreed to pay to Miss Parsons during her natural life the said sum of $1,800 annually in equal quarterly payments, "and the parties of the first part do hereby bind themselves, their heirs and representatives accordingly." The father, as general guardian of Mrs. Smith, was directed to make these payments out of moneys belonging to her in his custody, and she agreed to confirm and ratify the same upon attaining her majority. The contract further provided that, in case Mrs. Smith died, the liability of her husband by virtue of the agreement should terminate. The contract was under seal and executed by all the contracting parties. The allowance was paid in monthly payments during the minority of Mrs. Smith. After she reached the age of 21 years she had property in America producing an income and under the charge of the defendant, her agent. Remittances of this income were from time to time made to her in England, and the avails were placed to the credit of her husband, as she kept no separate account. For several years Miss Parsons was in England chiefly, caring for an elder brother of Mrs. Smith, and Mr. Smith, by direction of his wife, paid her in pounds and shillings the equivalent of $150 a month. The first payments after Mrs. Smith became of age were paid by the defendant, as her agent, in the United States. Mr. and Mrs. Smith were on a visit to this country, and she personally requested her agent to make these payments. The stipend, pursuant to the contract, was paid monthly by her direction until her death. Concededly the only obligation imposing these payments was the written agreement between the parties. Mrs. Smith in speaking of these payments referred to the agreement, and it was found among her papers after her decease. In 1893, shortly after becoming of age, she executed her will in which she directed her trustees to invest £8,000, "and to pay the income thereof to my friend Sara Berwick Parsons * * * for her life." On March 11, 1897, she executed her last will, which contained a like provision for the benefit of Miss Parsons. Mrs. Smith died in England in February, 1902. Letters of administration with the will annexed were issued to the defendant by the Surrogate's Court of Erie county. The plaintiff presented to him her claim pursuant to the written agreement, which was rejected, and this action was thereupon commenced. Other facts appear in the opinion.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

John G. Milburn, for appellant.
Lyman M. Bass, for respondent.

SPRING, J. At the close of the evidence each party moved for the direction of a verdict. By consent of the parties the jury was discharged and the case submitted to the justice presiding, who subsequently rendered his decision containing findings of fact and conclusions of law, and directed judgment in favor of the plaintiff. The facts are found in the decision with great detail, and settle the conflicting facts and any inferences fairly deducible therefrom in favor of the plaintiff. Each finding is supported by evidence to sustain it,

and a new trial should not be ordered unless we are satisfied that the decision in its material features is decidedly contrary to the evidence.

It is claimed by the learned counsel for the appellant that the written agreement was without consideration and that it was not ratified by Mrs. Smith after she attained her majority, and these contentions comprise the principal questions requiring consideration. The agreement on its face imports a valuable consideration. The presence of the seal and the acknowledgment of the receipt of $1 imply a consideration (Mutual Life Insurance Co. v. Yates County Nat. Bank, 35 App. Div. 218, 54 N. Y. Supp. 743; Matter of Steglich's Estate, 91 App. Div. 75, 86 N. Y. Supp. 257; American Encyc. of Law, vol. 6 [3d Ed.] p. 762; 2 Wharton on Evidence, § 1043), which may be rebutted by extraneous proof. Baird v. Baird, 145 N. Y. 659, 40 N. E. 222, 28 L. R. A. 375. Eliminating, however, the effect of the seal and the acknowledgment of payment, the agreement is founded on services performed by the plaintiff while in the employment of Miss King and for which she had agreed to pay. Had Mrs. Smith been an adult, the agreement in and of itself would have been sufficient to enable Miss Parsons to recover upon it, unless its validity was impeached by proof.

It becomes important, therefore, to refer to the evidence for the purpose of ascertaining if the recitals of employment and service in the agreement have been entirely disproved. In order to comprehend the scope of the agreement, it is essential to keep in mind the relations of these two people. Miss King was a motherless child who was living with her grandmother, and the plaintiff at 32 years of age came into the family when the child was 6 years of age and remained there for 6 years. They were together daily. They occupied the same bed. The plaintiff cared for the girl, assisted in her education, and they became closely attached to each other. After the death of the grandmother Miss King lived with the plaintiff in New York, and their keen affection existed unabated until the death of Mrs. Smith. For the services rendered the plaintiff received no compensation in money. It may be that none was expected to be paid. In any event, the services were valuable and were so regarded by Miss King, and they were sufficient to constitute a valuable consideration for the promise to pay therefor. The adequacy of the price paid or promised is not significant. Miss King had property to the amount of $300,000. She had been reared in affluence. She alone had the right to measure the value of the employment and companionship of her friend. It is not for another to determine that she paid in excess of their real worth, and her agreement to extend the term of payment during the lifetime of the plaintiff cannot be overthrown because we may conclude that the plaintiff did not earn the full sum which Mrs. Smith chose to pay her. Yarwood v. Trust & Guarantee Co. Ltd., 94 App. Div. 47, 87 N. Y. Supp. 947, affirmed Court of Appeals 182 N. Y. 527, 75 N. E. 1128; Earl v. Peck, 64 N. Y. 596. The agreement was executed as Mrs. Smith and her husband were about to depart from this country for their future home in England. In entering into the agreement she was not acting alone or unadvisedly. Her husband and father were parties to the contract, and they personally became liable for the

payment of the allowance which she fixed upon as the remuneration for the services rendered. The contract was drawn by her lawyer. The solemn recitals of consideration were not stealthily inserted in it or without her knowledge. The attorney was not preparing this important agreement for his client without information concerning the consideration. He ascertained the inducement for the agreement and embodied it clearly therein. There is no suggestion, and there could not be, of any overreaching in the preparation of the contract. So just was it, apparently, that her nearest relatives sanctioned it and were responsible for its performance. The prior agreement, even though voidable at the will of Miss King, denoted an intention to compensate the plaintiff. It was in effect canceled and the one in controversy substituted. Its cancellation was sufficient consideration for the more formal and explicit instrument. Hamer v. Sidway, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463, 21 Am. St. Rep. 693; Melville v. Kruse, 174 N. Y. 306, 66 N. E. 965.

The two letters quoted, which are the first indication of any intention to pay, do not militate against the contractual liability. These ladies were close friends. We would not expect in their letters, filled with outbursts of affection, to find the one asserting a debt and the other insisting that any payment made was voluntary. There was no enforceable demand. Miss King was a minor during all the time of the rendition of the services which induced the agreement. When she approached womanhood, realizing that the services had been valuable to her and that her friend was needy, she saw fit to impose upon herself their payment as an obligation. The correspondence denotes that the amount had been the subject of conversation and had been agreed upon between them, and that sum was adhered to from the beginning. One or two of the witnesses testified that Mrs. Smith said these payments were voluntarily made by her. They were originally. She could not have been made to pay. She was animated by her love and affection in undertaking to compensate where no debt could have been established. None the less, the compelling moral obligation did not wipe out the services rendered upon which she had the right to put a money value and by a binding agreement assume their payment according to her own estimate. Her declarations, if competent, are not sufficient to warrant the setting aside of the judgment in view of the other evidence contained in the record, and all of which was considered by the trial justice in arriving at his conclusion. These facts are established by evidence which is substantially undisputed. We think, therefore, the appellant has not affirmatively established that the agreement was without a valuable consideration; but, on the contrary, the facts affirm its validity.

It was, of course, essential to the validity of the agreement that it be ratified after Mrs. Smith became of age. The adoption of the agreement required no new consideration. There must be the confirmation, the definite recognition of the antecedent obligation, but nothing beyond to make it effective. Within the strict rule stated in the brief of the counsel for the appellant, Mrs. Smith confirmed the agreement after attaining her majority. The payments after that time were

regularly made according to her direction. She was nearly 19 years of age at the time the contract was entered into. It must have been made at her instance. She was a married woman, and undoubtedly comprehended the nature and extent of the obligations she had assumed. She retained the agreement or a copy of it. There was no other agreement whereby she was called upon to pay the plaintiff. She recognized its existence in talking with her friends and with the defendant, her agent. In her letters to the plaintiff she referred to her allowance. For eight years, without interruption, she caused the sum, which she had covenanted to pay, to be turned over to the plaintiff. An intelligent lady, with abundant means, with the active co-operation of her husband, she met the obligation graciously undertaken while a minor. She paid understandingly. It is too late now to claim that she did not intend to conform to the terms of the written agreement entered into with so much solemnity. If Mrs. Smith the year before her death had attempted to repudiate this agreement, claiming that it was without consideration and that it had not been ratified by her, the endeavor would have been unavailing if based on the proof contained in this record. The contract was not void. The authorities are quite uniform in maintaining the principle that the contract of an infant is voidable only, irrespective of whether for his benefit or to his prejudice. Blinn v. Schwarz, 177 N. Y. 252, 69 N. E. 542, 101 Am. St. Rep. 806; Henry v. Root, 33 N. Y. 526; Kent's Commentaries, vol. 2, p. 234 et seq.; Parsons on Contracts, vol. 1 (5th Ed.) p. 293 et seq.; II Blackstone's Commentaries, 291; American-Eng. Encyc. of Law, vol. 16 (2d Ed.) p. 272 et seq. Mrs. Smith on becoming of age might have entered into a new agreement with like import to the old one. She preferred to keep the old one alive. She had the same power to do this as to enter into an independent contract.

It is claimed there was no ratification because Mr. Smith made the payments to the plaintiff. The money of his wife was deposited with his bankers to his credit, and he testified that it was his wife's wish that these payments should be made. The acknowledgment of payment in each instance was made by the plaintiff to Mrs. Smith, although the check was that of her husband. Commencing with 1899 and continuing until the death of Mrs. Smith, the payments were made monthly in this country by Mr. Teller, her agent and the custodian of her funds, and each statement rendered by him to her showed these payments made each month. A more complete recognition of the agreement cannot be conceived.

Again, it is contended that the recital of consideration in the agreement is not binding on Mrs. Smith, because she was an infant at the time of its execution, and authorities are cited holding that the admissions of an infant are not binding against him. In these cases there had been no ratification, and the admissions made during infancy were attempted to be used to establish an estoppel or a liability notwithstanding the failure to show an affirmance of the agreement. In Sims v. Everhardt, 102 U. S. 300, 26 L. Ed. 87, cited in the dissenting opinion, the infant had executed a deed during her minority asserting that she was of age. There was no recognition of the deed after

she attained majority, and she commenced an action to set it aside. It was claimed that she was estopped by her admissions made while she was an infant. The court held that the declaration could not be resorted to in order to uphold an agreement which depended upon her affirmance after she became of age to give validity to it. The court said (at page 313 of 102 U. S., 26 L. Ed. 87.):

"The question is whether acts and declarations of an infant during infancy can estop him from asserting the validity of his deed after he has attained his majority."

The court further said that the conveyance itself "is an assertion of his right to convey," and nothing is added to it by a contemporaneous admission. The recitals in the agreement amount to an admission or declaration by Mrs. Smith that she owed the plaintiff for services while under age, at which time she had reached sufficient maturity to comprehend the scope and force of the declaration, and it is competent evidence against her tending to establish a consideration for the agreement. When Mrs. Smith became of age, she ratified the agreement; not a portion, but the agreement as it existed. That indorsement was equivalent to a new agreement. The ratification carried with it a recognition of the agreement to its fullest extent, and the recitals thus became effective against her. Of course, the agreement was in no part valid during the infancy of Mrs. Smith, and its validity depended upon her own conduct after she became of age. Its affirmance or disaffirmance rested entirely with her, and she elected to make this precise agreement valid and binding against her.

The agreement was executed in this state. It was expected to be performed here. The plaintiff was a resident of New York, and this had been the home of Mrs. Smith. The services had been rendered here. Mrs. Smith's property was in this state and in part, at least, remained invested here. After she became of age she was in this country and directed her agent to pay the allowance to Miss Parsons, so the initial ratification was in the state of New York. The confirmation of the agreement by Mrs. Smith made it operative from its inception. In these circumstances the agreement is to be governed by the laws of the state of New York. The effect of the bequest in the will of Mrs. Smith for the benefit of the plaintiff is not before us. That provision may have been intended as a substitute for the allowance fixed by the agreement. No such defense is pleaded, and no such question is suggested in the brief. There is nothing in the record to indicate that Miss Parsons is claiming both provisions. If such is her position and the effect of the will upon the contract were to be considered upon this appeal, an entirely different situation might be presented. In any event, the plaintiff has elected to enforce the agreement. If she is not entitled to take pursuant to the will and also recover upon the contract, her election has been made. Caulfield v. Sullivan, 85 N. Y. 153.

There is no proof that the trust bequest under the will has been set apart for the benefit of the plaintiff or that any payment, or tender of payment, pursuant to its terms has been made. There is no warrant in the record for the statement that she is seeking to recover $3,600.

We have simply to determine the validity of the agreement, with the inferences and facts, so far as they are conflicting, resolved in favor of the plaintiff, and we cannot be led away from this plain path by the suggestion that the plaintiff is endeavoring to take both by virtue of the will and of the agreement. Such an assumption may be entirely unwarranted. The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur, except McLENNAN, P. J., who dissents in an opinion in which NASH, J., concurs.

McLENNAN, P. J. (dissenting). The action was commenced on the 10th day of September, 1903, to recover the amount alleged to be due and owing to the plaintiff under and by virtue of a certain contract bearing date the 18th day of December, 1890, executed by the defendant's testatrix, who at the time was an infant. The defenses to plaintiff's alleged cause of action are in effect that the contract was not ratified by the testatrix after she became 21 years of age, and that there was no consideration for the same. The facts so far as deemed important are stated in the opinion.

Daisy Fletcher King, defendant's testatrix, was born in March, 1872. Her mother died during her infancy, and she, with her two brothers, both older than herself, went to live with their grandmother, a Mrs. Pratt, at her home in Delaware avenue, in the city of Buffalo, N. Y., and so continued until the death of the latter, which occurred in 1885, when the testatrix was 13 years of age. The plaintiff became a member of the grandmother's household in 1878, when the testatrix was six years old, and so continued until about a year before the grandmother's death, when the plaintiff went to New York to live with her mother and sister. Concededly while living with Mrs. Pratt, the plaintiff aided and assisted in caring for and bringing up the testatrix; but there is not a line in the evidence to indicate that she was not fully compensated for any and all services thus rendered by her. After the grandmother, Mrs. Pratt, died, the testatrix, with one of her brothers, who was seven years older, went to live with the plaintiff at a boarding house kept by her in New York City. The testatrix lived there and attended a day school for a little over two years, or until the beginning of the year 1888, when, with the plaintiff, she went to Europe, where they stayed about six months. She returned in the latter part of 1888, took an apartment on Fifth avenue, in New York City, where the plaintiff lived with her. During that time the plaintiff was in England for two months in 1890, taking charge of the testatrix's elder brother. There is no suggestion in the evidence that any services rendered by the plaintiff to Daisy King during this period were not fully paid for. Indeed, the contrary is very conclusively established from the fact that the testatrix was comparatively rich in her own right, and that the plaintiff was without property. We think it only fair from the evidence to assume that the trip to Europe and the cost of living in New York were paid out of the income of the testatrix. At least nothing is shown to indicate that whatever services were rendered by the plaintiff for or at the request of the testatrix were not fully paid for by her.

If we stop at this point and inquire, was the testatrix under any legal obligation to the plaintiff? the answer must be that there is no evidence to support such claim, but, upon the contrary, the facts lead irresistibly to the conclusion that any such obligations, if they existed, had been promptly and fully discharged as they arose. On December 11, 1890, the testatrix, who was then 18 years of age, was married to Mr. Willoughby Smith, who resided in London and was a subject of Great Britain. After the marriage she accompanied her husband to England, where she lived with him continuously until her death on February 9, 1902. On the 18th day of December, 1890, seven days after her marriage, the defendant's testatrix entered into the contract in question, which is as follows:

"This agreement, made this eighteenth day of December, in the year one thousand eight hundred and ninety, between Daisy King Smith, wife of Willoughby Statham Smith, and said Willoughby S. Smith, of London, England, of the first part, William J. King, as guardian of the said Daisy King Smith, of the second part, and Sara B. Parsons, now of Buffalo, of the third part, witnesses: Whereas the party of the third part heretofore entered the employment of the said Daisy King Smith, then Daisy Fletcher King, upon the agreement that such payment should be continued whether so employed or not, or she be otherwise provided for in case of the marriage of said Daisy Fletcher King; and whereas, said Daisy Fletcher King having now intermarried with said Willoughby S. Smith and intending to live in England, desires to carry into effect such agreement and understanding: Now, therefore, in consideration of the premises, the services heretofore performed by said Parsons and of one dollar to them in hand paid, the receipt of which is hereby acknowledged, the parties of the first part have covenanted and agreed and hereby do covenant and agree to pay to the said party of the third part annually during her life, the sum of eighteen hundred dollars in quarterly payments of four hundred and fifty dollars each, and the parties of the first part do hereby bind themselves, their heirs and representatives accordingly.

"And whereas, the said Daisy King Smith is now a minor of the age of eighteen years; and whereas, the said party of the second part is her guardian, having in his custody her income during her minority—the parties of the first part do hereby authorize, empower and direct the party of the second part to pay the party of the third part such annuity commencing with the first day of December, 1890, and thereafter to pay the same pending the minority of the said Daisy King Smith from any income in his hands belonging to her and the receipts of the party of the third part shall be a good and sufficient acquittance to the party of the second part for all such payments. And the parties of the first part do hereby covenant and agree that they will indemnify and save harmless the party of the second part from any liability on account of any such payments and that so soon as Daisy King Smith shall attain the age of twenty-one years they will by their solemn instrument ratify and confirm all such payments. But in case of the decease of the said Daisy King Smith the liability of the said Willoughby S. Smith under this agreement shall cease and determine. And the party of the second part hereby assents to the provisions hereof.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

| "Daisy King Smith. | [Seal.] |
| "Willoughby Statham Smith. | [Seal.] |
| "William J. King, Guardian. | [Seal.] |
| "Sara B. Parsons. | [Seal.]" |

What induced the contract thus made is clearly indicated by the letters following, and which most emphatically preclude the idea of legal obligation:

"March 1st, 1888

"My Dear Daisy: As you have often expressed your willingness to give me the sum of eighteen hundred dollars per year until you arrive at the age of twenty-one years, if you will write to me to this effect I shall be very grateful.

"Yours faithfully,                                    Sara B. Parsons.

"To Miss Daisy F. King."

"503 Fifth Avenue, N. Y., Mch. 2, 1888.

"My Dear Sara: Your letter of the 1st inst. received. I am perfectly willing to give you the sum therein mentioned (1,800 dollars per year) until I reach the age of twenty-one years. I think I can say in all truth and sincerity that there are few with whom I could have been constantly day and night as I have been with you and always found them the same true, devoted, faithful friend, always willing to share and sympathize with me in my sorrow or joy as the case may have been. I can assure you that I appreciate all your kindness in past years, and if at any time I can aid you or yours in any way it will only be a great pleasure to me to do so if such an occurrence may present itself. I trust we may always be together, that is, until either may find the proper person, one to whom we may give our heart, and even after that I agree to your offer, and with many, many thanks,

"I am your sincere friend,                              D. F. King."

We venture to suggest that there is not a scintilla of evidence which indicates that at the time the contract in question was made the testatrix was under any legal obligation to the plaintiff; that she owed her one cent for services rendered and which could have been recovered in an action at law. On the day before the contract in question was executed, suppose the plaintiff had commenced an action to recover the value of services rendered by her for or on behalf of the infant. Would it be pretended that there is any fact disclosed by the evidence in this record which would have justified a recovery in that case? The alleged consideration because of future services is equally without foundation. By the terms of the contract the plaintiff does not bind herself or agree to perform a single act of service for or on behalf of the testatrix after the execution of the contract in question. Undoubtedly there was genuine love and affection by the testatrix for her friend, the plaintiff, who had for many years practically sustained the relation of mother to her; but we have never understood that such relation may constitute a consideration which will support a contract entered into by an infant. As well might a mother seek to recover in an action at law the value of the love and affection bestowed upon a daughter who happened to have a separate estate. The contract, however, was entered into, and by it the infant admitted a consideration. Is such an admission by the infant any evidence of the fact? We think not. Suppose that in a certain contract made by an infant it was recited that the indebtedness, the payment of which was therein provided for, was for necessaries for such infant. In an action brought to enforce the performance of such contract, after the infant has become of age, does the plaintiff make prima facie proof of his right to recover by simply putting the contract in evidence, after proving its execution by such defendant? In the case at bar the only proof of consideration is the recital in the contract. If such recital is prima facie proof of the fact, then, in that regard, an admission made by an infant is quite as valuable as if made by an adult. In other words, a baby may say over his or her signature:

"I admit having received from A. $1,000, and in consideration of the same I agree to pay A., after I become of age, $10 per month until the whole sum is paid."

After becoming of age, and even after having paid the amount specified for several months thereafter, may not such infant insist that it is incumbent on the plaintiff to prove consideration, independent of his admission? If not, as before suggested, an admission as to consideration made by an infant in a contract executed by him has the same force and effect as if made by an adult. We think such admission of consideration contained in an infant's contract is not prima facie proof of the fact. Sims v. Everhardt, 102 U. S. 300, 313, 26 L. Ed. 87; MacGreal v. Taylor, 167 U. S. 688, 697, 17 Sup. Ct. 961, 42 L. Ed. 326; Lowell v. Daniels, 2 Gray (Mass.) 161, 61 Am. Dec. 448; Brown v. McCune, 5 Sandf. 224; Murphy v. Holmes, 87 App. Div. 366, 84 N. Y. Supp. 806.

In the Sims Case, supra, Judge Strong, in delivering the opinion for the court, said:

"The question is whether acts and declarations of an infant during infancy can estop him from asserting the invalidity of his deed after he has attained his majority. In regard to this there can be no doubt, founded either upon reason or authority. Without spending time to look at the reason, the authorities are all one way. An estoppel in pais is not applicable to infants, and a fraudulent representation of capacity cannot be an equivalent for actual capacity. Brown v. McCune, 5 Sandf. 224; Keen v. Coleman, 39 Pa. 299, 80 Am. Dec. 524. A conveyance by an infant is an assertion of his right to convey. A contemporaneous declaration of his right or of his age adds nothing to what is implied in his deed. An assertion of an estoppel against him is but a claim that he has assented or contracted. But he can no more do that effectively than he can make the contract alleged to be confirmed."

We conclude that the recital or admission of consideration in the infant's contract furnished no proof of the fact, and that independent of such admission there is absolutely no proof of consideration, and therefore that the testatrix or her representative was at liberty at any time to assert its invalidity.

Was the contract ratified by defendant's testatrix after she reached the age of 21 years? We assume it is the law that such an alleged ratification, in order to be effective as such, must be "either by an express new promise made orally or in writing, or it may be implied from acts or declarations clearly showing an intention to recognize the contract and to be bound by it. The new promise, whether in writing or oral, or evidenced by conduct, must be clear and unequivocal, and must show an intention to be bound." Clark on Contracts (1894) p. 248. Parsons, in his work on Contracts (8th Ed.; vol. 1, p. 349), states the rule to be: "It [ratification] must be made with the deliberate purpose of assuming a liability from which he knows that he is discharged by law." A mere acknowledgment by an infant after he obtains his majority is not enough. Jackson v. Carpenter, 11 Johns. 542. In Tucker v. Moreland, 10 Pet. 58, 75, 9 L. Ed. 345, the court said:

"The mere recognition of the fact that a conveyance has been made is not per se proof or a confirmation of it. * * * Admitting that acts in pais may amount to a confirmation of a deed, still we are of the opinion that

these acts should be of such a solemn and unequivocal nature as to establish a clear intention to confirm the deed, after a full knowledge that it was voidable."

As we have seen, the contract in question was executed on the 18th day of December, 1890, seven days after the marriage of defendant's testatrix, who was then 18 years of age, and immediately thereafter she went to England with her husband, where she resided with him until her death in February, 1902. It appears that the husband had property of his own, and that the income from his wife's property went into his bank account; no separation or discrimination as to his or hers being attempted. He received and deposited with his own her income, and all was used for the needs or pleasure of both, as either desired or deemed proper. The contract which is the subject of dispute by its terms obligated defendant's testatrix to pay $1,800 per year in equal quarterly payments to the plaintiff during her natural life. The husband guarantied such payment during the life of his wife. Such payments were made by him or by his direction regularly until his wife's death, and it is solely because of the payments so made that a ratification of the contract is claimed to have been established. If there had been no obligation resting upon the husband in the premises, such payments having been made by or authorized by him, he having charge of his wife's income, there would be force in the suggestion that they were made pursuant to her request and direction; but he by the terms of the contract had obligated himself to pay during the natural life of his wife. How, then, can it be said that after his wife became 21 years of age such payments were made in ratification of her alleged legal obligation, rather than in discharge of his own as guarantor? Indeed, it appears, without contradiction, that the wife had frequently stated that she did not understand the contract in question imposed any legal obligation upon her. But, in addition, it appears that immediately upon reaching her majority she made a will which created a trust in plaintiff's favor, which would yield to the plaintiff annually during her natural life precisely the amount specified in the contract. Can we say it was the intention of defendant's testatrix to bestow upon the plaintiff an annuity of $3,600, instead of $1,800 specified in the contract and will? We think the evidence conclusively shows that any payments which were made in apparent recognition or affirmance of the contract in question should not be considered as a ratification by the infant, but that at the most they were made or authorized by the husband in discharge of his obligation.

The case at bar presents the not unusual situation of a person seeking to acquire a portion of a decedent's property without consideration and because of words written or alleged to have been spoken. In this case the defendant's testatrix sought to provide for the plaintiff, her loved companion, in effect her mother, by giving her annually $1,800 during her natural life. It is now sought to make the estate of the deceased contribute to such support the sum of $3,600 per annum, because we must assume the will of the testatrix which was put in evidence, and which, entirely independent of the contract, provided for the payment to the plaintiff of an annuity of $1,800, is in all

respects valid. We think all the acts done by defendant's testatrix after she became 21 years of age are consistent with the proposition that she felt a daughter's love and affection for the plaintiff; that such feeling impelled her to make provision for her friend, practically her mother; but that there was no intention on her part to impose an obligation upon her estate of $3,600 per annum in favor of the plaintiff. Can it be conceived upon the evidence that defendant's testatrix by permitting her husband to pay annually the amount specified in the contract, which he was legally obligated to pay, thereby intended to obligate her estate to annually pay such sum during the natural life of the plaintiff, in addition to the payment of a like sum provided for by her will?

The facts as to ratification are that the testatrix's husband, who had charge of the income of her estate, and who was jointly obligated with her to make the payments specified in the contract, made or authorized such payments to be made after his wife became 21 years of age the same as before and until her death. We think there is no evidence which tends to show that the defendant's testatrix ever in fact did or intended to ratify the contract in question. All the evidence in the record shows most conclusively that she intended only to provide for her friend, practically her mother, a life annuity of $1,800. We think there is no evidence which tends to support the proposition that the testatrix intended the plaintiff should have out of her property after her death an annuity of $3,600, instead of the $1,800, which had regularly been paid to her during the lifetime of the defendant's testatrix. There ought to be no misunderstanding as to the facts. Defendant's testatrix, when 18 years of age, agreed, without any consideration therefor, to pay to the plaintiff a life annuity of $1,800. The husband of the testatrix guarantied such payment during the lifetime of his wife. After her marriage the annuity was paid by the husband, or by his direction, until his wife's death. She by her will having provided for the payment of the same annuity to the plaintiff, upon her death the payments under the contract ceased, but the same payments were continued under the provisions of the will. By the judgment appealed from such obligation is sought to be enforced, notwithstanding the provision of the will, upon the ground that the defendant's testatrix ratified the contract executed by her, after she became of age. We think the evidence wholly fails to support such contention.

The conclusion is reached that as matter of law there is not shown to have been any legal consideration to support the contract in question, and that the finding of the learned trial judge that such contract was ratified by defendant's testatrix after reaching the age of 21 years was contrary to and against the weight of the evidence.

It follows that the judgment appealed from should be reversed upon questions of law and of fact, and that a new trial should be granted, with costs to the appellant to abide event.

NASH, J., concurs.