(28 Misc. Rep. 67.)

## REALS v. WESTON.

(Supreme Court, Trial Term, Onondaga County.  June, 1899.)

1. INSANE PERSONS—VOID SALE OF LAND—ORDER.
    Where the committee having charge of a lunatic's estate petitions for and obtains an order to mortgage the lunatic's realty, and then sells it under such order, and obtains an affirmance of the sale, such sale is void.
2. SAME—PRESUMPTIONS—RECITAL IN ORDER.
    Where the order of court confirming the sale of a lunatic's property recites that the committee had presented a report that he had sold the prem-

ises, making no reference to any order of sale, but referring to an order of a certain date, which was an order to mortgage, these recitals create no presumption that there was any order of sale.

3. SAME—RIGHTS OF PURCHASER—LIEN.
    Where the property of a lunatic is sold under irregular proceedings, and the sale is set aside, an innocent purchaser is entitled to an equitable lien on it for the purchase money.

4. SAME—EXTENT OF LIEN.
    Where the land of a lunatic which is subject to a mortgage is sold, and payment made partly by discharging the mortgage and partly by a payment to the committee directly, the purchaser has a lien for the entire amount paid by him, on the sale being set aside for irregularity in the proceedings.

5. SAME—TIME WHEN INCOMPETENT—INQUISITION—MORTGAGES.
    Under Code, § 2335, limiting the question of insanity to the time when the inquiry is being made, a finding on inquisition that a lunatic had been insane for eight months preceding cannot be used to attack the validity of mortgages executed by the lunatic within that time.

Ejectment by Ellen A. Reals against G. Bernice Low Weston. Judgment ordered for plaintiff.

Edwin W. Parsons, for plaintiff.
Cook, Nottingham & Pierce, for defendant.

HISCOCK, J.   The premises in question originally belonged to one Wright, who died intestate on or about July 31, 1896, leaving plaintiff his only heir at law.   Some years before his death, and in or about the month of December, 1877, Wright was duly adjudged a lunatic and incapable of managing his property, and one Gove appointed committee thereof.   Gove continued to act as such committee until the death of the lunatic.   By proceedings commenced about April 1, 1878, he attempted to dispose of the lunatic's real estate in question for the purpose of paying his debts.   Those proceedings were originally directed to the end of giving a mortgage upon it, but they finally, about a year later, resulted in a sale and deed under which defendant claims.   Various objections are made by plaintiff to the legality of the deed and the proceedings which led up to it.   I shall only find it necessary to consider one of them.

The steps which were taken for the disposition of this real estate under the statutes providing for such proceedings in reference to lunatic's real estate, with their respective dates, were as follows: April 1, 1878:   Petition by committee showing, among other things, mortgages upon this real estate amounting to $906.50; other debts of lunatic, $411.25; total, $1,317.25; and personal property owned by the lunatic of about $116,—and asking for leave to sell or mortgage the property in question for the purpose of paying said debts. April 3, 1878:   Order of reference to report on matters set forth in petition.   April 3, 1878:   Report of referee that it was necessary to mortgage or sell for payment of debts.   April 3, 1878:   Order authorizing and directing committee to mortgage.   April 2, 1879:   Report by committee that he had sold the premises to defendant for $1,600, subject to the approval of court.   April 7, 1879:   Order confirming report, and directing sale and delivery of deed to defendant upon receipt of purchase price, and in accordance with which deed

was subsequently delivered. It will thus be noted chat the only authority obtained by the committee for disposing of these premises before he made a sale of them was an order permitting him to mortgage them. Subject to the discussion hereafter of defendant's claims upon that point, and upon which I shall find against her, the preliminary order permitting a sale, required by the statute before any sale or contract of sale could be made by the committee, was never obtained. The preliminary order obtained provided for an entirely different course of proceeding, viz. a mortgage. It is too well settled to require citation of authorities that the omission to comply with a statutory provision in relation to the disposition of lunatics' estates so important as this is fatal, and that a deed based upon such erroneous proceedings cannot be upheld as such. Assuming the facts as above indicated, this was substantially conceded by defendant. But it was urged by her that there was such evidence or presumptions in favor of the existence of such preliminary order for sale as ought to prevail. The direct evidence upon this subject, given by an employé of the county clerk's office, in regard to the nonexistence of such an order, is pretty conclusive. But this took place in these proceedings to which defendant especially refers. In his report of sale above mentioned, presented to the court, the committee states, "In pursuance of an order of this court in the above matter, dated the 3d day of April, 1878, authorizing and directing me to sell," etc.; and the order entered upon such report recited, "On reading and filing the report of * * * the committee, * * * stating that he had sold * * * the premises specified in an order issued by this court on the 3d day of April, 1878," etc. Upon these facts and recitals are invoked, as creating a presumption that a preliminary order of sale was made, the well-settled principles that recitals contained in orders or judgments of certain courts that certain steps in the proceedings of which they are a part have been taken, make prima facie evidence that they have. But I find no sufficient recitals to sustain the claim. The order referred to does not by any means recite that such an order was obtained. It simply recites that the committee had presented a report that he had sold premises described in a certain order, and which the committee, as claimed in his report, but not as recited in the order then being made, authorized a sale. I am not aware of any law under which such a statement by the committee, even though under oath, creates any presumption in favor of the existence of the order claimed. Furthermore, the statement in the report describes by date, etc., a certain order. The only order answering that description is one for a mortgage, and there is very conclusive evidence that there was none for a sale to answer the description.

Passing by this question, however, defendant, setting up by her answer, and urging upon the trial the fact of her payment of the full consideration of $1,600 for the premises, insists that she should in some way have credit for this, although the deed cannot be sustained. I think she should. There is no suggestion of bad faith upon her part, or any evidence that she even drove a hard bargain with the lunatic's estate. She seems to have acted with perfect

propriety, and in her present predicament to be a victim of blundering upon the part of the committee and his attorney. The order confirming and authorizing the committee to carry out the sale provided that defendant should pay $1,600, and the committee was to apply such sum to the payment of the lunatic's debts, including the mortgages hereinbefore mentioned. As a matter of fact, the purchaser paid off the mortgage, amounting to between $900 and $1,000, and gave the balance of the $1,600 to the committee. These mortgages had been executed by the lunatic, and two of them, aggregating about two-thirds of the entire amount, within six months before he was adjudged a lunatic. The jury, by their inquisition, found that Wright was not only a lunatic when that was executed, but that he had been in that condition "for the space of about eight months." Plaintiff insists that defendant certainly ought not to have any relief for the payment of these mortgages—First, because she should have paid all the money to the committee, and have allowed him to pay them; second, because the finding of the jury establishes that Wright was of unsound mind when he gave two of them, and they are void. I do not regard the first objection as a substantial one in this connection. No question has been made but what defendant paid the mortgages at the amounts claimed by her. This being so, the estate of the lunatic, and this plaintiff as his heir, got the same benefit from the payment, whether made by the hand of one or the other. So far as the second objection is concerned, there is no binding evidence against defendant that Wright was a lunatic when these mortgages were given, unless it be found in the inquisition above referred to. That did so find. But, at the time it so found, a provision substantially as now found in section 2335 of the Code was in force, limiting the question of mental sanity to the time when the inquiry was being made. Laws 1874, c. 446, tit. 2, § 2. The finding of the jury, therefore, as to Wright's condition before that, was unauthorized, and establishes nothing certainly against defendant.

I have no doubt about the power and duty of the court to equitably protect the defendant in this transaction. This purpose will be accomplished by a judgment giving defendant an equitable lien upon the premises in question for the amounts paid by her to the committee, and upon the mortgages as aforesaid, with interest from the date of payment, less the rental value of the premises during her occupation, and which has been about $65 per year, and, upon payment of or subject to such lien, allowing plaintiff possession of the premises. Ordered accordingly.