The judgment of conviction should be reversed and a new trial granted.

HISCOCK, Ch. J., HOGAN, CARDOZO and POUND, JJ., concur; CHASE and McLAUGHLIN, JJ., dissent and vote for affirmance on authority of section 542, Code of Criminal Procedure.

Judgment of conviction reversed, etc.

---

WILLIAM C. BOSCHEN, as Committee of the Person and Property of JULIA B. BRYANT, an Incompetent Person, Respondent, v. ULYSSES G. STOCKWELL, Appellant.

Incompetent persons — action to recover money paid on contract by incompetent — evidence — finding by jury upon inquisition of the incompetent that insanity existed at a date prior to that of the inquisition and before date of contract in question, not presumptive evidence of the fact — erroneous charge — improper admission of hearsay evidence to prove insanity of the incompetent.

1. In a proceeding for the appointment of a commission for an incompetent by reason of lunacy the inquiry is limited and confined by the statute (Code Civ. Pro. § 2335) to the question of incom-

petency at the time of the inquiry, and, therefore, a finding on an inquisition, that the insanity of the alleged incompetent existed at a date prior to the date of the inquiry, is not presumptive evidence of the fact.

2. Upon the trial of an action in which the incompetency of a person making a contract with reference to real estate was in question, it was error to admit in evidence the findings of a jury in an inquisition of the incompetent to the effect that such incompetency dated back to a period prior to the time of the inquisition and previous to the execution of such contract. It was also error for the trial court to charge in effect that the decree upon the inquisition of lunacy was presumptive evidence of insanity at the time of the execution of the contract. Such a charge was in effect a direction of a verdict for the plaintiff.

3. Where the plaintiff in such an action, the committee of the incompetent, was on his examination as a witness in his own behalf permitted to testify that a letter received by him from a physician two years prior to the inquisition, stated that his mother, who was the alleged incompetent, was in such a condition that she should be put in an asylum at once, such evidence was hearsay and incompetent, and its admission was erroneous.

*Boschen* v. *Stockwell,* 171 App. Div. 34, reversed.

(Argued October 7, 1918; decided October 29, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 7, 1916, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Irving Oliver* and *Michael D. Reilly* for appellant. The court erred in ruling that the finding in the lunacy proceeding was presumptive evidence of the incompetency of the intestate during all of the time previous to the actual adjudication of incompetency referred to in the findings. (*Matter of Demelt,* 27 Hun, 480; *Dominick* v. *Dominick,* 20 Abb. [N. C.] 286; *S. T. M. R. Assn.* v. *Laudenbach,* 5 N. Y. Supp. 901; *Schanck* v. *Hooper,* 160 N. Y. Supp. 627; *Reals* v. *Weston,* 28 Misc. Rep. 67; *Matter of Grote,* 31 Misc. Rep. 99.)

*Neile F. Towner* for respondent. The ruling of the trial court with reference to the presumption that Mrs. Bryant was insane prior to the date of the inquisition was not error. (*Hughes* v. *Jones,* 116 N. Y. 67; *Richie* v. *Shepard,* 158 App. Div. 194; *Sanders* v. *Savage,* 75 App. Div. 333; *Hardy* v. *Berger,* 76 App. Div. 396; *Van Deusen* v. *Sweet,* 51 N. Y. 378; *Banker* v. *Banker,* 63 N. Y. 409.)

CRANE, J. Section 2335 of the Code of Civil Procedure reads as follows: " Where the petition alleges, that the person, with respect to whom it prays for the appointment of a committee, is incompetent, by reason of lunacy, the inquiry with respect to his competency, upon the execution of a commission, or the trial at a trial term, as prescribed in this title, must be confined to the question, whether he is so incompetent, at the time of the inquiry; and testimony, respecting anything said or done by him, or his demeanor or state of mind, more than two years before the hearing or trial, shall not be received as proof of lunacy, unless the court otherwise specially directs, · in the order granting the commission, or directing the trial by jury."

The inquiry is limited and confined to the question of incompetency at the time of the inquiry and such has been the law ever since chapter 446 of the Laws of 1874, title 2, section 2.

Prior to that time the practice had been to permit the jury to find how long the lunacy had continued (2 Barbour's Ch. Pr. 234; *Butler* v. *Jarvis,* 51 Hun, 248; *L'Amoureux* v. *Crosby,* 2 Paige Ch. 422; *Hart* v. *Deamer,* 6 Wendell, 497; *Griswold* v. *Miller,* 15 Barbour, 520), and it had been held that a finding on an inquisition that the insanity existed at a date prior to the date of inquiry was presumptive evidence of the fact; that if the finding of the jury overreached the execution of a

deed executed by the alleged incompetent their inquisition was presumptive but not conclusive evidence of the grantor's incapacity. (*Van Deusen* v. *Sweet*, 51 N. Y. 378; *Hughes* v. *Jones*, 116 N. Y. 67.) Although this latter case was not decided in this court until 1889, examination will disclose that the lunacy proceedings were conducted under the old practice, the inquisition being returned on the 18th day of October 1871.

However, since the amendment above referred to, there is no such presumption, and the finding by the jury that the lunacy existed at a time prior to the date of the inquiry is of no effect and without authority.

Attention was directed to this change in the practice by the present chief judge of this court when sitting at Special Term. (*Reals* v. *Weston*, 28 Misc. Rep. 67. See, also, *Matter of Preston Will*, 113 App. Div. 732.)

In *Dominick* v. *Dominick* (20 Abb. N. C. 286) it was said of section 2335 of the Code of Civil Procedure: "* * *. By this section a change has been made in the practice to be pursued in this class of cases. Prior to its enactment the jury were at liberty to inquire into, and return a statement of, the antecedent period over which the lunacy had extended; and upon such a determination as to that period the inquisition was accepted by the court as *prima facie* or presumptive evidence that the unsoundness of mind had so far continued. (*Van Deusen* v. *Sweet*, 51 N. Y. 378; *Banker* v. *Banker*, 63 id. 409.) And it had this effect as evidence against persons acquiring rights or interests under the lunatic prior to the inquisition, although they were not parties to, and had no notice whatever of, the proceedings.

" It was probably to abolish the injustice of this rule that in the enactment of the Code of Civil Procedure it was declared that ' the inquiry * * * must be confined to the question whether he is so incompetent at the time of the inquiry.' "

Such authorities to the contrary as *Richie* v. *Shepard* (158 App. Div. 192); *Sander* v. *Savage* (75 App. Div. 333); *Hardy* v. *Berger* (76 App. Div. 393) do not correctly state the law and failed to note that the *Van Deusen* and *Hughes* cases, cited and relied upon, were determined according to the practice before the above statutory change in the law.

When in this case, therefore, the inquisition papers had been offered in evidence carrying the incompetency of Julia B. Bryant back to 1908, the time of the contract in question, and the judge charged upon request that the decree upon the inquisition of lunacy was presumptive evidence of insanity during all the previous time referred to in the findings, it was error and a wrong statement of the law. In view of the one question which had been submitted to the jury and the conflict in testimony regarding Julia B. Bryant's mental condition in 1908, the error cannot be regarded as harmless.

The facts briefly are that Julia B. Bryant, a widow about sixty-four years of age living at Moline, Illinois, came to Albany to visit her sister-in-law in July of 1908. She had one son, a mining engineer, who was away on business a great deal of the time, but who lived on terms of intimacy with his mother. Mrs. Bryant had made up her mind to leave Moline and take up her residence in Albany where her family formerly had lived. While in Albany she met the defendant Stockwell, who was a real estate operator and at that time was engaged in erecting dwelling houses in the Pine Hills section of the city. Mrs. Bryant on the 6th day of August, 1908, entered into a written contract with Stockwell which is the subject of this action. It provided that he should erect for her a house upon a lot owned by him and convey the same to Mrs. Bryant for the sum of $4,500, $1,500 to be paid in cash on or before the 10th day of September 1908, and $2,500 by the assumption of a

mortgage which Stockwell was to negotiate and the balance of $500 by a promissory note to be executed by Mrs. Bryant. The defendant built the house and Mrs. Bryant moved into it sometime in the fall of 1908 and continued to occupy it for about a year and until October of 1909, when proceedings were commenced to have her adjudged an incompetent. Mrs. Bryant paid $1,500 and $400 of the promissory note, making $1,900 in all, but never received the deed as all the terms of the contract, it was alleged, had not been complied with.

In October 1909, Julia B. Bryant's son, William C. Boschen, commenced proceedings to have her declared incompetent. The findings of the jury dated November 30th, 1909, were to the effect that: " The said Julia B. Bryant is a lunatic with lucid intervals and is an habitual drunkard and by reason of such infirmity she is not capable of governing herself or of managing her affairs or property or properly taking care of her affairs, lands, tenements, goods and chattels, and that such infirmity dates from about 1908."

Thereafter, the plaintiff, having been appointed committee of the person and property of Julia B. Bryant, brought this action to recover the $1,900 paid to the defendant upon the building contract, alleging that at the time the contract was executed in August of 1908, Mrs. Bryant was mentally incapable of making a contract. Waiving all equities, the parties submitted this case to the jury upon the one issue of whether or not Mrs. Bryant was competent at the time she executed the building contract with the defendant, and upon this issue there was conflicting evidence. No attempt will be made to state it in detail, sufficient to say that the contract was acknowledged before a commissioner of deeds and was executed by Mrs. Bryant at the home of her sister-in-law and in the presence of her sister-in-law and sister-in-law's husband.

Although there was no question as to Mrs. Bryant's subsequent mental condition, as she died in an institution to which she had been committed and thus the plaintiff became substituted as administrator in place of committee, yet there was a very marked conflict in the evidence as to Mrs. Bryant's sanity in August 1908, and the defendant was entitled to have the question fairly presented. If she were sane at the time the contract was entered into the plaintiff could not succeed. For the court to charge that another jury had determined that she was insane in 1908 and incapable of contracting, and that this finding should stand until overcome by the defendant's evidence was in effect directing a verdict for the plaintiff. The trial jury would hardly be expected to override the finding of the previous jury. The charge, therefore, to which attention has been called was not merely error, it was fatal to the defendant. For this reason, therefore, if for no other, the judgment in this case would have to be reversed.

But, as the case will go back for a new trial, it may be well to call attention to a ruling on the evidence which we also consider substantial error. When the son, William C. Boschen, was on the stand being examined by his counsel in his own behalf he was asked whether he had received information about his mother, while he was in Central America in 1907, from Dr. Arp of Moline, Illinois. He stated that he had received a letter from the doctor but did not have it, and then over objection and exception was permitted to testify that the letter he received from Dr. Arp stated that his mother was in such a condition that she should be put in an asylum at once. Our rules of evidence permit no such testimony. Although the doctor had been called as a witness and had testified about the woman's condition this did not make competent this hearsay testimony upon the part of the plaintiff which virtually amounted to an improper corroboration of the doctor.

For the reasons above stated the judgment appealed from must be reversed and new trial granted, with costs to abide the event.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, CARDOZO, POUND and ANDREWS, JJ., concur.

Judgment reversed, etc.